Donnie NEWTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 404–89.

Court of Criminal Appeals of Texas, En Banc.

Feb. 21, 1990.

John J.C. O'Shea, W. Richard Forcum, Lubbock, for appellant.

Travis S. Ware, Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION OF APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BERCHELMANN, Judge.

Appellant was convicted of aggravated robbery, Tex.Penal Code Ann. Sec. 29.03(a). The jury assessed punishment at thirty years' confinement in the Texas Department of Corrections.

The Amarillo Court of Appeals affirmed appellant's conviction, holding, among other things, that the trial court did not err in instructing the jury regarding parole laws. See Tex.Code Crim.Proc.Ann. art. 37.07 § 4(a). *Newton v. State*, No. 07–86–0016–CR (Tex.App.—Amarillo, delivered January 28, 1987). In reaching that determination, the Court of Appeals did not have the benefit of our opinion in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987), wherein we held that § 4(a) was unconstitutional. We therefore granted appellant's petition for discretionary review, and subsequently remanded the cause to the Court of Appeals to apply a harmless error analysis pursuant to *Rose*, 752 S.W.2d at 552–55. On remand, the Court of Appeals held that the instruction did not contribute to the punishment assessed, and affirmed the conviction. *Newton v. State*, No. 07–86–0016–CR (Tex.App.—Amarillo, delivered February 10, 1989) (opinion on remand).

We again granted appellant's petition for discretionary review, this time to determine whether the Court of Appeals erred in holding that the statutory parole instruction was harmless. When making its harm analysis the Court of Appeals did not have the benefit of our recent opinion in *Arnold v. State*, 784 S.W.2d 372 (Tex.Crim.App. 1990), wherein we re-examined the factors appellate courts are to consider when applying a harm analysis to *"Rose* error." See Tex.R.App.Pro. Rule 81(b)(2). For purposes of judicial economy, we will apply our recent *Arnold* opinion to the case at bar, rather than once again remanding this cause to the Court of Appeals. For the reasons stated herein, we will affirm the Court of Appeals' opinion on remand.

*Arnold*, supra, actually consisted of five cases consolidated for the purpose of addressing various recurring problems in appellate review of *Rose* error. Therein we held that "a reviewing court must examine the record for indicia of factors reasonably conducing to affect minds of average rational jurors in their determination of punishment, the ultimate inquiry being whether it is impossible to say beyond a reasonable doubt that considering declarations made by the trial court in its § 4 instruction law did not influence the jury adversely to appellant in assessing punishment." *Arnold*, 784 S.W.2d at 377. In so doing, appellate courts are to look to the individual facts of each case, including, but not limited to, the degree to which § 4 affected the voir dire process, whether counsel argued § 4 at punishment, the degree to which the trial court admonished the jury to not consider parole laws in reaching their decision on punishment, and other indications that the jury considered parole laws, such as a jury note to that effect. *Arnold*, supra. We also concluded that the length of the sentence imposed "alone is not a gauge for harm; rather, it serves somewhat as a barometric measure of other pressures" likely to have influenced the jury in assessing punishment. *Id.*, 784 S.W.2d at 384. Likewise, where a case presents a particularly heinous fact situation or where a defendant's prior record demonstrates a propensity for violence, an appellate court is not to blindly assume that the jury did not take into account the parole instruction. *Id.*, 784 S.W.2d at 398. Finally, as Judge Campbell aptly noted in his concurring opinion, "it is

important to stress that these factors are neither exhaustive nor universally applicable. Every case will present a different set of circumstances. The majority opinion should not be read to leave the impression that a laundry list of these possible factors should be checked off each time a court undertakes an 81(1)(b)(2) analysis." *Id.,* 784 S.W.2d at 375 (Campbell, J., concurring).

With these factors in mind, we turn to the record in the case at bar. Appellant was a police officer with Texas Tech University. After becoming disgruntled with his superiors and frustrated about missing a promotion, appellant robbed at gunpoint a Purolator guard on the university campus. Appellant approached the guard from behind, jammed a revolver into the guard's back, and warned, "Give me your money or I'll blow your goddamn brains out." Appellant then struck the guard in the head and arm with the weapon. The guard bled profusely, and the gash to his head required stitches. One witness saw appellant fleeing from the scene, and mistakenly assumed appellant was chasing the assailant.

In the robbery appellant took two bags containing cash, checks and credit card receipts. The police arrested appellant three weeks later in a motel room in Triangle, Virginia. The police recovered various items used in the robbery, along with an automatic pistol, ammunition, a knife and sheath, fake blood capsules, a wig, nose

putty, a bullet proof vest, face paint and a gas mask.

■ The court's charge to the jury included the statutory parole law instruction set forth in § 4. Other than the standard language contained in the last two sentences of § 4, there was no additional "curative instruction."[1] While appellant did object to the inclusion of the parole instruction prior to the reading of the court's charge, neither appellant nor the prosecution alluded to parole in closing argument. Cf. *Arnold,* 784 S.W.2d at 379 (wherein this Court observed that an overruled objection to the parole instruction "practically invites legitimate comment" on the instruction). Furthermore, the prosecution did not attempt to qualify prospective jurors on the § 4 instruction; in fact, the parole instruction cannot be characterized as a significant factor of voir dire.[2] As appellant recognizes in his brief, there are no other factors which indicate that the jury considered parole, such as a jury note requesting instruction on parole implications.

Appellant had no prior convictions. While the State requested a life sentence, the defense argued for probation. Found guilty of a first degree felony, his possible range of punishment was imprisonment for life or for any term of not more than ninety-nine years or less than five years, in addition to a fine not to exceed ten thousand dollars. Tex.Penal Code Ann.Sec. 12.-32. Appellant was sentenced to thirty years' imprisonment.[3] In the case at bar,

1. Those two sentences state that "you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant." Tex.Code Crim. Proc.Ann. art. 37.07 § 4(a). These exact words were incorporated into the court's charge in the case at bar. It should be noted that *Arnold,* 784 S.W.2d at 388, n. 23, specifically held that this statutory admonition cannot be fairly regarded as "curative" of the error attendant to the remaining parole instruction.

2. There was one reference to parole law by defense counsel during voir dire. The context, however, limits the likelihood that the reference made any contribution to the jurors in their determination of punishment. The record reflects that veniremember Emma Rivera worked for the "State Parole Board" in an unstated

capacity. Defense counsel individually questioned veniremember Rivera about whether her job would affect her deliberations. She eventually indicated that, notwithstanding the judge's instructions to the contrary, she would probably consider parole in her deliberations. She was struck for cause without objection from the State. There was no other mention of parole during voir dire.

3. Thus, this is not a situation where one could argue, for example, that the jury likely took the minimum sentence and tripled it to compensate for the one-third time served instruction. *Arnold,* 784 S.W.2d at 383, citing, *Wheatly v. State,* 764 S.W.2d 271, 273 (Tex.App.—Houston [1st Dist.] 1988, no p.d.r.). Nor is this akin to a situation where the prosecutor asked the jury to return a sentence of sixty years to assure that the defendant would serve at least twenty, and

the Court of Appeals determined that the jury was not influenced by the parole instruction based upon two factors: 1) the heinous nature of the crime, and 2) the admonitions in the statutory instruction ordering the jury not to consider the manner in which parole law may be applied to appellant. This case is very similar to *Gaines v. State*, No. 0507–89, a companion case to *Arnold*, supra. In *Gaines*, the San Antonio Court of Appeals primarily utilized the same two factors in determining that there was no harm resulting from the court's parole instruction. *Gaines v. State*, 723 S.W.2d 302 (Tex.App.—San Antonio, 1987). These two factors, taken in isolation, are not sufficient to overcome the presumption of harm. *Arnold*, 784 S.W.2d at 395.

*Gaines* involved an aggravated sexual assault of a ten year old girl. Besides the admonition embodied in § 4, Gaines' charge contained no other "curative instruction." There was no mention of parole in voir dire or in arguments of the counsel. Gaines was eligible for probation. The defense argued for probation, but the prosecution recommended fifteen to twenty years. The jury assessed Gaines' punishment at twenty-five years' confinement. In the *Gaines* situation, we held that these factors enabled us to declare beyond a reasonable doubt that the § 4 instruction "made no contribution to the verdict on punishment." *Arnold*, 784 S.W.2d at 395.

The similarities between the cases are striking. Both concerned aggravated offenses, both lacked a *Rose* "curative instruction," and there was no mention of parole in closing argument in either case. Moreover, both cases are devoid of any indicia upon which one could reasonably conclude that the jury considered the parole instruction.

While Rule 81(b)(2) mandates an appellate presumption of harm in giving a § 4 instruction, we conclude beyond a reasonable doubt, as we did in *Gaines*, that the instruction made no contribution to the punishment assessed.

the jury returned a sentence of sixty years. See and cf. *Jones v. State*, 725 S.W.2d 770 (Tex.App.

The judgment of the Court of Appeals is affirmed.

McCORMICK, P.J., concurs in the result.

TEAGUE, J., dissents.