David LOPEZ, Appellant,

v.

The STATE of Texas.

No. 1151–94.

Court of Criminal Appeals of Texas, En Banc.

May 8, 1996.

---

Terrence W. Kirk, Austin, for appellant.

Robert Smith, Asst. Dist. Atty., Lisa D. Stewart, Asst. Dist. Atty., Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was indicted on February 4, 1988 for the offense of murder pursuant to V.T.C.A. Penal Code, § 19.02(a)(1), alleged to have been committed on June 25, 1979 in Travis County. In a trial by jury, appellant was convicted in the 147th District Court of Travis County, and was sentenced to life imprisonment in the Texas Department of Criminal Justice, Institutional Division. On

appeal, the Court of Appeals for the Third District reversed appellant's conviction. *Lopez v. State,* 793 S.W.2d 738 (Tex.App.–Austin 1990), *pet. dism'd, improvidently granted,* 810 S.W.2d 401 (Tex.Cr.App.1991).

On remand, a jury again found appellant guilty of murder, and sentenced him to life imprisonment. The jury also made an affirmative finding that appellant had used a deadly weapon. The court of appeals affirmed appellant's conviction on August 31, 1994 in an unpublished opinion. *Lopez v. State,* No. 03–92–304–CR (Tex.App.—Austin, delivered August 31, 1994). We granted appellant's petition for discretionary review and the State's cross-petition on January 25, 1995, in order to address four issues.[1] Since appellant does not challenge the sufficiency of the evidence, no recitation of the facts is necessary.

## I. COURT OF APPEALS' DECISION

On appeal, the court of appeals analyzed appellant's three points of error. Appellant first claimed that by permitting a deadly weapon finding in the second trial, he was potentially subjected to a longer period of incarceration since he would not be eligible for parole until he had served fifteen years of his sentence. The court of appeals found that the trial court did not err by allowing the State to seek an affirmative finding of the use of a deadly weapon because the charge and punishment in the second trial were no more severe than those in the first trial, the insertion of the affirmative finding of the deadly weapon did not result in a more severe sentence, and that the punishment sought and assessed in both trials was available whether or not appellant used a deadly weapon.

In appellant's second point of error, appellant claimed that the trial court erred in admitting evidence that appellant had previously used LSD, speed, and hallucinogenic mushrooms. The court of appeals found that the trial court did not err in admitting evidence of appellant's previous use of drugs by permitting the State to cross examine appellant regarding his drug use because the evidence had already been injected into the trial with no objection by appellant.

In appellant's third point of error, appellant claimed that the trial court erred in admitting evidence that appellant had at one time engaged in strange behavior with a former girlfriend while under the influence of hallucinogenic mushrooms. The court of appeals held that the trial court did not err in admitting this evidence. The court of appeals found that this testimony was properly admitted since specific instances of prior bad acts are admissible to correct false impressions made by a witness.

## II. ANALYSIS OF APPELLANT'S GROUND FOR REVIEW # 1 & STATE'S GROUND FOR REVIEW

Prior to trial, appellant filed a motion in limine on drug use and extraneous acts. During the State's case in chief at guilt/innocence, appellant cross examined State witness Menefee about drug use among a group of friends that included appellant. On redirect, the State asked Menefee about the particular drugs that were taken by the group and if generally, there was a change in anyone once the drugs were taken. He answered in the affirmative. Appellant did not object to these questions regarding drug use.

Appellant took the stand to testify in his own defense. On cross examination, appellant answered the State's questions and ad-

1. We granted appellant's petition for discretionary review on the following three grounds for review:

1) Whether the court of appeals erred in holding that a highly prejudicial act of prior misconduct was admissible to impeach a "false impression" elicited from appellant on cross-examination;

2) Whether the court of appeals erred in holding that the doctrine of prosecutorial vindictiveness can never apply to the decision to seek an affirmative finding of the use of a deadly weapon; and

3) Whether the court of appeals erred in holding that the ex post facto doctrine did not preclude the state from seeking, at appellant's second trial, an affirmative finding of the use of a deadly weapon.

We granted the State's cross petition on the following ground for review:

1) Whether evidence of appellant's incident with Bobby Kopp–Durkee was admissible as evidence of appellant's motive.

mitted using drugs. The State asked appellant if his personality changed while he was under the influence of the mind-altering drugs. Appellant disagreed with the State's statement that he had sharp mood swings. Before the next question could be asked, appellant objected to the State's mentioning of specific acts of misconduct. The court overruled appellant's objection, and the State was permitted to question appellant about an incident where while under the influence of drugs, appellant went over to an ex-girl-friend's house, undressed, and climbed into her bed.

Appellant claims that the court of appeals erred in holding that this act of prior misconduct was admissible to impeach a "false impression" that was elicited from appellant on cross-examination. Appellant contends that the theory of admissibility that the court relied upon was never offered by the State at trial or on appeal. Also, according to appellant, the doctrine of "false impression" does not apply in this case. Appellant concedes that when a defendant "voluntarily" misstates his criminal record on cross-examination **without any prompting or maneuvering by the State** impeachment is permitted, appellant maintains that such is not the case here since appellant did not volunteer the incident in question.

The State argues that the evidence offered regarding appellant's prior act was not offered solely for the purpose of impeachment. This evidence was also admissible as appellant's motive for committing the murder. The State cites *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Cr.App.1990) to support the proposition that if evidence is admissible on any grounds, its admission will be upheld by this court. According to the State, it is clear from the record that appellant opened the door to impeachment when the defense attorney questioned Menefee about the drug use among this group (including appellant). The defense also asked questions about changes in behavior among these friends while they were on drugs. Consequently, the State's position is that once appellant took the stand, the State was properly allowed to question him about both his drug use and his behavior while on drugs. The State contends that it

was entitled to dispel the false impression left by appellant that he was incapable of committing this crime. In the alternative, the State proposes that this ground for review should be dismissed as improvidently granted.

■ The record in this case does not support the court of appeals' decision that this incident was admissible for the purpose of correcting a false impression. This court has held that when a defendant suggests on direct examination that he has never been in trouble with the law, the State has the right to disclose this misrepresentation. *Hammett v. State*, 713 S.W.2d 102 (Tex.Cr.App.1986). In *Shipman v. State*, 604 S.W.2d 182, 184 (Tex.Cr.App.1980), on cross-examination, the prosecutor asked if the defendant had been intoxicated within the last two or three years. After the defendant responded that "he did not think so", the prosecutor tried to impeach him by showing that he had been convicted for driving a motor vehicle on a public highway while intoxicated within the preceding two years. This court held that it was "error to permit the State to contradict appellant's answer on this collateral matter by showing he had previously been convicted of driving a motor vehicle on a public highway while intoxicated". *Id.* at 183. *Baxter v. State*, 645 S.W.2d 812 (Tex.Cr.App.1983) and *Martinez v. State*, 728 S.W.2d 360 (Tex. Cr.App.1987) further explain when it is appropriate for the State to impeach appellant in order to correct a false impression left by appellant. These two cases make it clear that such questioning by the State can only be done when appellant has voluntarily testified to the collateral matter. In the case at bar, the record clearly shows that appellant in no way volunteered information about his personality while on drugs or the specific episode that occurred with his ex-girlfriend. While it is true that Appellant's counsel did question a witness about the use of drugs among appellant's friends, counsel made no mention of how appellant acted while on drugs. This information was also not volunteered by appellant on direct or on cross-examination. In fact, it was while appellant was being cross-examined by the State that the subject of strange behavior while on drugs was brought up. It was appellant's

denial to the State's questions that prompted the State to introduce the incident with his ex-girlfriend. This evidence was not admissible to correct a false impression because under these facts appellant did not create a false impression without "prompting or maneuvering" by the State.

■ In the State's cross-petition, the State asserts that even if this evidence is inadmissible to correct appellant's false impression, it is admissible to show motive. As the State asserts, we have held that if evidence is admissible for any reason, its admission will not be overturned on appeal. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Cr.App.1990). The court of appeals found that the evidence of appellant's behavior while on drugs was irrelevant because there was no evidence that he was under the influence of drugs when the murder occurred. We agree[2]. The record clearly shows that there was no evidence adduced at trial that demonstrated that appellant was under the influence of drugs at the time appellant committed this murder. We cannot see how jumping into an ex-girlfriend's bed without any clothes on provides a motive for the defendant killing the victim. The victim in this case was not this same ex-girlfriend. Furthermore, the victim was not killed in her bed. We find this evidence was not admissible to impeach a false impression nor was it admissible to show appellant's motive. We therefore hold that the trial court erred in admitting this evidence, and the court of appeals erred in its finding that such admission was not error by the trial court. Appellant's first ground for review is sustained. The State's ground for review is overruled.

### III. ANALYSIS OF APPELLANT'S GROUND FOR REVIEW # 2

Before the second trial began, the State filed notice of intent to seek an affirmative finding of the use of a deadly weapon. Appellant responded by filing a motion to strike the State's motion because of prosecutorial vindictiveness. During a pretrial hearing, appellant, citing *Blackledge v. Perry,* 417

U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), argued that the State was barred from seeking an affirmative finding in this second trial, because the State may not retaliate in this manner against a defendant who is being retried. At the hearing, the State explained that they had not sought an affirmative finding in the first trial because by law they were not able to do so. Before the second trial began, this court decided *Mixon v. State,* 804 S.W.2d 107 (Tex.Cr.App.1991), and held for the first time that an affirmative finding could be made even if the only description of the deadly weapon involved was "an unknown object." Therefore, according to the State, the prosecution was authorized to seek an affirmative finding for the second trial while they were not authorized to do so for the first trial because the first trial occurred before *Mixon* was decided. *Id.* In the case at bar, in the trial court's charge to the jury for the second trial, there was an instruction on the use of a deadly weapon during the commission of the crime. Appellant's objection was overruled, and the jury found that a deadly weapon was used by appellant.

Appellant relies heavily on *Blackledge* to support his position that an affirmative finding should not have been allowed in the second trial. *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The holding in *Blackledge* was adopted in large part from the decision in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In that case, the United States Supreme Court examined whether the Double Jeopardy or Due Process Clause would prohibit a trial court from imposing a harsher sentence on a defendant who was retried. *Id.* at 724, 89 S.Ct. at 2080. The Supreme Court found that there is a presumption of vindictiveness that can only be overcome by sound justification from the trial judge. The Court held that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial," and that an increased sentence is only proper when findings by the trial judge

---

2. However, as stated previously, the court of appeals found the evidence of appellant's behavior while on drugs to be admissible to impeach a false impression, and as previously discussed, we disagree that such was admissible on that basis.

are on the record. *Id.* at 725, 89 S.Ct. at 2080.

In *Blackledge,* the Supreme Court recognized that this same opportunity for vindictiveness exists for prosecutors. 417 U.S. at 26, 94 S.Ct. at 2102. The defendant was charged with the offense of misdemeanor assault with a deadly weapon, and was convicted. Appellant, having the right to a trial *de novo,* appealed, and while that appeal was pending, the State obtained an indictment covering the same act, for a felony offense. The Court in *Blackledge* maintained that Due Process may be offended when the prosecution brings more serious charges against a defendant on retrial after appeal, but only when there is a reasonable likelihood of vindictiveness. *Id.* "A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo,* without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.*

Appellant argues that the presumption of vindictiveness should apply to the State when a more severe sentence is rendered on retrial. As explained above, *Blackledge* prohibits **prosecutors** from bringing more serious **charges** on retrial when there is a "realistic likelihood of vindictiveness." Similarly, *Pearce* prohibits **trial judges** from rendering more severe **sentences** without showing a reason on the record. The State in this case did not bring more serious charges, in fact, the State proceeded on the same indictment.

 In answer to appellant's ground for review, we cannot go so far as to say that prosecutorial vindictiveness can never apply to a decision to seek an affirmative finding. We also find that the court of appeals did not make such a specific holding. The decision as to whether prosecutorial vindictiveness exists must be decided on a case by case basis, based on each individual record. In this case, we find that the decision to seek an affirmative finding was based on new case law. As stated above, between the first and second trial, this Court further clarified the law concerning when the State could properly seek an affirmative finding and held for the first time that an affirmative finding could be sought where the deadly weapon is described only as "an unknown object." *Mixon v. State,* 804 S.W.2d 107 (Tex.Cr.App. 1991). After *Mixon* was decided, the State determined that the case at bar was one in which seeking an affirmative finding would be proper. In this case, no more serious charges were brought, and there is no evidence from the record to support the position that the State sought an affirmative finding to retaliate against the defendant. Appellant's second ground for review is overruled.

## IV. ANALYSIS OF GROUND FOR REVIEW # 3

In appellant's third ground for review, he claims that the court of appeals erred in holding that the ex post facto doctrine did not preclude the State from seeking an affirmative finding in the second trial. Appellant asserts that *Bouie v. City of Columbia,* supports his position that, the ex post facto doctrine prohibited the retroactive application of *Mixon* to his case, because this court's holding in *Mixon* was unforeseeable. *Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964). The State first argues that appellant failed to preserve the ex post facto claim since he failed to object on this basis at trial. In the alternative, the State asserts that even on the merits, this claim must fail because this Court's decision in *Mixon* was a foreseeable clarification of existing law, and the affirmative finding did not change appellant's range of punishment.

 We must first consider whether the State is correct in arguing that appellant has waived this ground for review because of his failure to object on this ground at trial. This Court has already decided this issue. In *Ieppert v. State,* we examined the ex post facto clause and determined that there was no requirement for defendants to argue that a law was ex post facto at trial. *Ieppert v. State,* 908 S.W.2d 217, 220 (Tex.Cr.App.1995). We conclusively held that this right is not waivable by individuals, and that "ex post facto prohibitions do not merely confer upon the people a waivable or forfeitable right not to have their conduct penalized retroactive-

ly." *Id.* at 220. Because there was no requirement for appellant to object at trial to the retroactive application of *Mixon,* we will address the merits of appellant's claim.

■ An ex post facto law is a violation of the state or federal constitution if 1) the statute punishes as a crime an act previously committed, which was innocent when done; 2) the statute changes punishment and inflicts greater punishment than was allowed by law at the time the act was committed; or 3) the statute deprives one charged with a crime of any defenses that were available when the act was committed. *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990); *Ex parte Hallmark,* 883 S.W.2d 672, 674 (1994). Article I, § 10 of the United States Constitution prohibits the legislature from passing ex post facto laws. *Ex parte Scales,* 853 S.W.2d 586, 587 (1993).

■ This Court's decision in *Mixon* allowed the State to seek an affirmative finding in the second trial. Appellant argues that the ex post facto doctrine prohibited the State from seeking an affirmative finding, based on new caselaw, because he was therefore subjected to a punishment that was greater than that which was allowed at the time the offense was committed. Originally an examination of whether an ex post facto law violated the constitution applied only to laws passed by the legislature, such is no longer the case. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Ex parte Scales,* 853 S.W.2d 586 (Tex.Cr.App.1993). *Bouie* involved a statute that prohibited the entry on lands of another after notice had been given not to enter. *Bouie v. City of Columbia,* 378 U.S. at 348, 84 S.Ct. at 1699. The South Carolina Supreme Court affirmed the convictions after interpreting the statute to include the act of remaining on the premises after receiving notice to leave. *Id.* at 351, 84 S.Ct. at 1701. The United States Supreme Court reversed the lower court's holding, and held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the [United States] Constitution forbids." *Id.* at 353, 84 S.Ct. at 1702.

The Court went on to say that since "... a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.* at 353, 354, 84 S.Ct. at 1702, 1703. This includes situations where the judicial construction clarifies a statute by narrowing or broadening the statute's definition. The States first argument on the merits must therefore fail because a thorough reading of *Bouie* makes it clear that this case not only prohibits judicial construction that operates as ex post facto law, but also emphasizes that this rule does apply when the judicial construction is a clarification of existing law. *Id.* at 353, 84 S.Ct. at 1702. Our holding in *Scales* is based on the rationale of *Bouie.* *Ex parte Scales,* 853 S.W.2d 586 (Tex.Cr.App.1993).

We have already established that the ex post facto doctrine prohibiting the retroactive application of laws can apply to the judicial construction of laws. We must now decide whether appellant was subjected to greater punishment because the State was allowed to seek an affirmative finding of the use of a deadly weapon in the second trial. It is important to remember that appellant was sentenced to life imprisonment in both trials, and that the State did not bring more serious charges on retrial. The only difference is the fact that as a result of the affirmative finding in the second trial, appellant is ineligible for parole until he has served at least fifteen years of his life sentence Art. 42.18 sec. 8(b)(3), V.A.C.C.P.

Appellant cites *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), wherein the United States Supreme Court examined the application of the ex post facto clause and explained that an ex post facto law is impermissible "not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory." In the case at bar, appellant's parole is a discretionary decision that is left to the Board of Pardons and Parole and appellant must mandatorily serve at least fifteen years before he is eligible for parole. The decision to grant parole is still discre-

tionary, but it in no way lengthens the actual sentence assessed. We find that *Weaver* is not controlling.

■ In *Ex Parte Hallmark*, 883 S.W.2d 672, we held that the retroactive application of the policy to deny the restoration of good time conduct did not violate the ex post facto provisions of the state or federal constitutions. *Id.* at 674. We explained that good time conduct, although it effects parole eligibility, does not have an effect on the length of a sentence. *Id.* An affirmative finding effects parole eligibility, but it does not lengthen the sentence. While it is clear that the imposition of a fifteen years minimum before being parole eligible is more burdensome, it did not create a greater punishment for appellant, since he received the same sentence in both trials, and parole eligibility has no effect on the length of the sentence. Appellant's third ground for review is overruled.

## V. CONCLUSION

The judgment of the court of appeals is affirmed in part and vacated in part. This cause is remanded to the court of appeals to conduct a harm analysis pursuant to this Court's finding that the trial court erred in admitting evidence of prior misconduct of appellant.

CLINTON, J., concurs in the result.

BAIRD, J., concurs with note. I join the opinion of the Court but note that I am sympathetic to the concerns expressed by Judge Keller in part II of her concurring and dissenting opinion. *Post,* 928 S.W.2d at 531. Indeed, I have previously expressed those same concerns. *Saenz v. State,* 843 S.W.2d 24, 30 (Tex.Cr.App.1992) (Baird, J., concurring and dissenting); *and, Abdnor v. State,* 808 S.W.2d 476, 478 (Tex.Cr.App.1991) (Baird, J., concurring and dissenting). However, my arguments did not carry the day and it is now the strict policy of this Court to have the court of appeals conduct a harm analysis in the first instance. *See, Washington v. State,* 856 S.W.2d 184, 191 (Tex.Cr.

App.1993) (Meyers, J., concurring); *and, Saenz,* 843 S.W.2d at 29 (Clinton, J., concurring).

MANSFIELD, Judge, concurring and dissenting on appellant's petition for discretionary review.

I concur with the Court's disposition of appellant's second and third grounds for review and the State's cross-petition for discretionary review. However, because I disagree with the Court's disposition of appellant's first ground for review, I must respectfully dissent.

Appellant was originally indicted in 1988 for the offense of murder, pursuant to Texas Penal Code § 19.02(a)(1), alleged to have been committed on or about June 25, 1979. His conviction and sentence of life imprisonment were reversed by the Third Court of Appeals. *Lopez v. State,* 793 S.W.2d 738 (Tex.App.—Austin 1990), pet. dism'd, 810 S.W.2d 401 (Tex.Crim.App.1991). On remand, a jury again found appellant guilty of murder and sentenced him to life imprisonment. The jury also found appellant used a deadly weapon in the commission of the offense. The Third Court of Appeals affirmed appellant's conviction and sentence. *Lopez v. State,* No. 03–92–304–CR (Tex.App.—Austin 1994) (unpublished). This Court granted appellant's petition for discretionary review and the State's cross-petition for discretionary review. We did so to address three grounds for review raised by appellant and one ground for review raised by the State.

In appellant's first ground for review, he argues the court of appeals erred in holding that a highly prejudicial act of prior misconduct was admissible to impeach a "false impression" elicited from appellant on cross-examination.[1] In the State's sole ground for review, the State contends evidence of appellant's incident with Bobby Kopp–Durkee was admissible as evidence of appellant's motive.

During the guilt/innocence phase of the trial, appellant testified in his own defense. On cross-examination, appellant admitted he

---

1. Because I concur with the Court's disposition of appellant's second and third grounds for re- view, I will not recite them here.

used illicit drugs.[2] Over appellant's objection, the State introduced evidence about an incident which occurred while appellant was allegedly under the influence of drugs. This incident involved appellant going to the house of a former girlfriend (Bobby Kopp, now Bobby Durkee), undressing, and getting into her bed, which took place without her prior knowledge or consent. Perry Durkee, a friend of appellant and the then-current boyfriend of Bobby Kopp, testified he and appellant had ingested hallucinogenic mushrooms earlier on the day of the incident. Durkee testified that it was his opinion appellant would not have gone to Kopp's house and gotten into her bed had he not been on drugs.

At one point during the cross-examination of appellant by the State, the following exchange took place:

Q. And you, in particular, Mr. Lopez, that had a change on (sic) your personality when you would be under the influence of those types of mind-altering drugs; isn't that correct?

A. I'm sure anything would have.

Q. But in regard to you in particular, Mr. Lopez, you had sharp mood swings. In other words, you would be down at one moment and then sky high the next; isn't that correct?

A. I don't recall, sir.

Q. You disagree with that?

A. Yes, sir.

Q. Do you agree that when you would be under the influence of let's say, hallucinogenic mushrooms, for example, doing those with Menefee, at one point you just broke down and started crying and started talking about your brother, your older brother?

A. Yes, that's possible.

Q. Now, I am not just talking about mood swings, Mr. Lopez. You would behave strangely when you were under the influence of certain drugs, like mushrooms, isn't that right?

A. I don't think so, sir.

At this point the State, over appellant's objection, inquired into the incident involving the ex-girlfriend and appellant.

Appellant contends the court of appeals erred in holding that the evidence of the incident involving his former girlfriend was admissible to impeach the "false impression" created by appellant while testifying on cross-examination, basing his objection on Rule 404.[3] Appellant's contention is incorrect. Appellant testified he did not act strangely while under the influence of drugs, particularly hallucinogenic mushrooms. Evidence of the incident involving appellant's ex-girlfriend, which other testimony indicated was the result of appellant's consumption of hallucinogenic mushrooms earlier that day, was admissible for the purpose of rebutting the false impression created by appellant that he did not act strangely while under the influence of hallucinogenic drugs. Rule 404(b) does not bar the admission of evidence of other crimes, wrongs or acts to correct false impressions made by a witness.[4]

We have held the false impression doctrine is not limited to evidence elicited solely during direct examination of a witness. *Martinez v. State*, 728 S.W.2d 360 (Tex.Crim.App. 1987). In *Martinez*, the defendant, on cross-examination, testified falsely that the case

2. State witness, David Menefee, testified about drug use among a group of friends which included appellant. During redirect, the State asked Menefee about the drugs the group took, including marijuana, speed, hallucinogenic mushrooms and LSD. He was also asked if the drugs changed anyone. He answered in the affirmative. Appellant testified that he used the drugs referred to above, but denied they affected his personality or caused sharp mood swings.

3. As there was no evidence appellant was under the influence of drugs on the day of the murder, evidence of his behavior while under the influence of drugs for the purpose of showing why appellant committed the murder would have been excludable as irrelevant or as character conformity evidence. [Tex.R.Crim.Ev. 402 or 404(a), respectively.] Additionally, this evidence was not admissible to show motive (there being no evidence appellant was under the influence of drugs at the time of the offense) and was thus inadmissible to show same. Therefore, the State's ground for review is correctly overruled by the Court.

4. Appellant would have been entitled to a Rule 105(a) jury instruction to consider this evidence only for impeachment purposes; appellant did not request any such instruction.

was his first arrest. This Court held the State was entitled to impeach the defendant with evidence of a prior arrest to correct the false impression made by the defendant while testifying on cross-examination. *Martinez, supra*, at 361. See also *Baxter v. State*, 645 S.W.2d 812, 816 (Tex.Crim.App. 1983); *Ramirez v. State*, 802 S.W.2d 674, 677 (Tex.Crim.App.1990) (false impression doctrine still viable under Rule 607); *Delk v. State*, 855 S.W.2d 700 (Tex.Crim.App.), *cert. denied*, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993).

In the present case, the State merely introduced evidence of the incident with appellant's ex-girlfriend to counter a false impression created by appellant, by his own testimony, that he did not exhibit strange behavior while under the influence of hallucinogenic drugs. Relying on this Court's prior rulings on this issue, the court of appeals correctly overruled appellant's point of error (our ground for review number one). Accordingly, I would affirm the judgment of the court of appeals.

I respectfully dissent.

WHITE, J., joins.

KELLER, Judge, concurring and dissenting on appellant's petition for discretionary review.

I agree with the majority opinion's disposition of the vindictiveness and "ex post facto" claims. However, I disagree with some of the opinion's reasoning regarding the "ex post facto claim," and I disagree with the majority's disposition of the admission of evidence claim.

## I. THE *EX POST FACTO* CLAIM

The Due Process Clause of the Fourteenth Amendment prevents appellate courts from "achieving precisely the same result by judicial construction" that would be achieved by a legislature if it passed a law in violation of the Ex Post Facto Clause of Article I, § 10 of the United States Constitution. *Bouie v. City of Columbia*, 378 U.S. 347, 353–354, 84 S.Ct. 1697, 1702–1703, 12 L.Ed.2d 894 (1964). Whether the judicial construction of a criminal statute achieves this "same result" depends upon whether it is an *"unforeseeable judicial enlargement"* of the statute in question. *Id.* at 353, 84 S.Ct. at 1702 (emphasis added). By holding that *Bouie* applies to "a clarification of existing law," the majority, in effect, reads the word "unforeseeable" out of the Supreme Court's opinion. Yet, that Court's use of the word was not accidental, as shown by its elaboration of the issue:

> The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," [citation omitted], must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. [Citation omitted].

*Id.* at 354, 84 S.Ct. at 1703. The Supreme Court has reaffirmed numerous times the principle that a court's construction or clarification of the law must be "unforeseeable" to implicate the Due Process Clause's prohibition against retroactive judicial decisions. *Douglas v. Buder*, 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973). *Hamling v. United States*, 418 U.S. 87, 116, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). *Mullaney v. Wilbur*, 421 U.S. 684, 690 n. 10, 95 S.Ct. 1881, 1885 n. 10, 44 L.Ed.2d 508 (1975) (due process violated only where the appellate court's "reinterpretation of a criminal statute was so novel as to be 'unforeseeable' and therefore deprived the defendants of fair notice of the possible criminality of their acts at the time they were committed"). *Rose v. Locke*, 423 U.S. 48, 53, 96 S.Ct. 243, 246, 46 L.Ed.2d 185 (1975). *Splawn v. California*, 431 U.S. 595, 601, 97 S.Ct. 1987, 1991, 52 L.Ed.2d 606 (1977) ("the elements of a statutory offense may not be so changed by judicial interpretation as to deny to accused defendants fair warning of the crime prohibited"). *Brown v. Ohio*, 432 U.S. 161, 169 n. 8, 97 S.Ct. 2221, 2227 n. 8, 53 L.Ed.2d 187 (1977). *Osborne v. Ohio*, 495 U.S. 103, 117, 110 S.Ct. 1691, 1700, 109 L.Ed.2d 98 (1990) (in *Bouie*, appellate court's "expansion of the statute was unfore-

seeable and therefore the petitioners had no reason to suspect that their conduct was criminal").

A judicial construction is "unforeseeable" if it conflicts with a prior, clearly established judicial construction of the statute. *Marks v. United States*, 430 U.S. 188, 195, 97 S.Ct. 990, 994, 51 L.Ed.2d 260 (1977) (relaxing judicially-imposed restrictions on obscenity laws). *Ex Parte Scales*, 853 S.W.2d 586, 587–588 (Tex.Crim.App.1993) (abandoning judicially-created "carving doctrine"). *Bouie* is also an example of this situation; the Supreme Court explained that the South Carolina Supreme Court's construction of the statute was at odds with prior South Carolina decisions. 378 U.S. at 356–359, 84 S.Ct. at 1704–1706. A judicial construction may also be "unforeseeable" when its interpretation sharply diverges from the plain meaning of the language in the statute. *See Id.* at 352, 84 S.Ct. at 1701 (construction of "entry" on the property after notice prohibiting entry to include remaining on the property after a request to leave). *Douglas*, 412 U.S. at 432, 93 S.Ct. at 2200 (construction of "arrest" to include issuance of a traffic citation).

On the other hand, a construction which merely adds a "clarifying gloss" to the statute, making its meaning more definite, does not violate the due process proscriptions contained in *Bouie*. *Hamling*, 418 U.S. at 116, 94 S.Ct. at 2907. Such a "clarifying gloss" does not "make criminal ... conduct which had not previously been thought criminal." *Id.* (ellipse inserted). For example, the judicial enumeration of specific categories that fulfill a general offense element does not violate due process. *Id.* (obscene material). *See also Marks*, 430 U.S. at 195 n. 11, 97 S.Ct. at 994 n. 11. Also, specific conduct that is fairly included within a generally worded statutory offense does not violate due process. *Rose*, 423 U.S. at 53, 96 S.Ct. at 245 (cunnilingus construed as fulfilling the statutory proscription of "crimes against nature").

The majority makes no attempt to determine whether the judicial construction at issue here was "unforeseeable." I would hold

that our construction of the deadly weapon statute in *Mixon v. State*, 804 S.W.2d 107 (Tex.Crim.App.1991) was not "unforeseeable." As the above cases illustrate, foreseeability is determined at the time of the allegedly criminal conduct. When appellant used a deadly weapon, the statute placed him on notice that using the deadly weapon would have adverse consequences on his parole eligibility. Appellant was obviously aware of the nature of the deadly weapon used. The fact that the rest of the world remained unaware of the deadly weapon's nature does not mean that *appellant* was deprived of fair notice under the statute.

Moreover, even if ignorance of the weapon's nature were somehow subject to *Bouie*'s requirements, I would nevertheless hold that *Mixon* was not an *"unforeseeable* judicial enlargement" of the statute. There is no prior caselaw conflicting with *Mixon*—that is, no prior decisions have held that an affirmative finding cannot be made if the only description of the deadly weapon involved is "an unknown object." The question then becomes whether the judicial construction is unforeseeable in light of the plain language of the statute. Applicant's eligibility for parole is governed by V.A.A.C.P., Art. 42.12 § 15(b) (1979),[1] which provides in relevant part:

> [I]f the judgment contains an affirmative finding under § 3f(a)(2) of this Article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less ...

The applicable "affirmative finding" statute provides in relevant part:

> ... when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the tri-

---

1. The applicable law is that in existence at the time the offense was committed. *See* V.A.A.C.P., Art. 42.18 (Supp. 1996), Historical and Statutory Notes, p. 281, quoting Acts 1987, 70th Leg., ch. 1101, § 18(b) & (d).

al court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited a firearm, the court shall enter that finding in its judgment. V.A.C.C.P., Art. 42.12 § 3f(a)(2) (1979). A deadly weapon is defined as:

(A) a firearm or anything that is manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

V.A.P.C., § 1.07(a)(11). Nothing in the language of these statutes suggests that a deadly weapon must be a "known" or specifically described object. While the statutes do not expressly sanction alleging a deadly weapon as "an unknown object," it is not unforeseeable that the statute would be interpreted to allow such a pleading.

## II. HARMLESS ERROR ANALYSIS

The majority remands this cause to the Court of Appeals to conduct a harm analysis regarding the admission of evidence of appellant's prior misconduct. While this is normally the proper method of proceeding, under certain rare occasions, we should conduct the harm analysis ourselves. We have conducted a harmless error analysis to further "judicial economy" where the case had already been remanded once. *Newton v. State,* 784 S.W.2d 689, 690 (Tex.Crim.App. 1990). We have also conducted a harmless error analysis in the first instance where harm was conclusively established on the record. *Gipson v. State,* 844 S.W.2d 738, 741 (plurality opinion) & 742 (Benavides, J. concurring) (Tex.Crim.App.1992).

Whether this Court should ever conduct a harmless error analysis in the first instance has been subject to dispute and does not appear to be clearly resolved. In a footnote contained in a majority opinion, this Court has opined that we should never conduct a harmless error analysis in the first instance. *Owens v. State,* 827 S.W.2d 911, 917–918 n. 7 (Tex.Crim.App.1992). However, footnotes—even in majority opinions—are generally not binding precedent. *Young v. State,* 826

S.W.2d 141, 144 n. 5 (Tex.Crim.App.1991). In concurring and dissenting opinions, several judges on this Court have argued that we should sometimes conduct a harmless error analysis in the first instance rather than always remanding the case to the intermediate appellate court. *Owens,* 827 S.W.2d at 918 (Overstreet, J. concurring and dissenting). *Abdnor v. State,* 808 S.W.2d 476, 478 (Tex.Crim.App.1991) (Baird, J. concurring and dissenting). *DeVaughn v. State,* 749 S.W.2d 62, 74 (Tex.Crim.App.1988) (Teague, J. concurring and dissenting).

The United States Supreme Court has adopted the position that conducting a harmless error analysis in the first instance is appropriate on rare occasions. *Yates v. Evatt,* 500 U.S. 391, 402, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991). *Pope v. Illinois,* 481 U.S. 497, 504, 107 S.Ct. 1918, 1923, 95 L.Ed.2d 439 (1987). *Rose v. Clark,* 478 U.S. 570, 584, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986). *United States v. Lane,* 474 U.S. 438, 450, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). *United States v. Hasting,* 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983). While the Court held that such review should be exercised "sparingly," *see Pope, Rose, Lane,* and *Hasting* cited above, it is appropriate to exercise such review, on occasion, to serve the interests of judicial economy. *Yates,* 500 U.S. at 402, 111 S.Ct. at 1892. I agree with the approach taken by the Supreme Court. On some rare occasions, following the usual practice of remanding for a harmless error determination would merely produce unnecessary delay and waste of judicial resources. On those occasions, we should conduct the harmless error analysis ourselves.

If ever a case merited expeditious treatment, this is the case. This murder was committed almost seventeen years ago; two trials have been conducted. Moreover, the erroneously admitted evidence, consisting of the fact that appellant once took his clothes off and, uninvited, got into bed with an ex-girlfriend, is so obviously harmless that to remand the case to the Court of Appeals would cause a needless delay of justice. If this Court is ever justified in conducting a harm analysis rather than remanding a case

to the Court of Appeals, we should do so in this case.

Because I believe that error in the admission of evidence of the prior misconduct was harmless, I would affirm the judgment of the Court of Appeals.

With these comments, I join the majority opinion as to appellant's ground for review two (vindictiveness), I concur as to ground three ("ex post facto"), and I dissent as to ground one (admission of evidence).

McCORMICK, P.J., joins.