# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00844-CR

**Benito Carrillo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-2005-300119, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Benito Carrillo of the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2003). The district court assessed punishment at fifty years' confinement. In four issues on appeal, Carrillo contests the factual sufficiency of the evidence, alleges two evidentiary errors, and asserts that the district court made an impermissible comment on the weight of the evidence. We will affirm.

## BACKGROUND

Carrillo was indicted for intentionally or knowingly causing the death of his stepfather, Martin Garcia, on or about January 15, 2005. The indictment also alleged three prior felony convictions.

Garcia's death followed an altercation with Carrillo in a mobile home occupied by Garcia and various members of their family, several of whom testified at trial.[1] Carrillo's sister, Monique Lopez, testified that Carrillo arrived at the home at approximately 12:30 a.m., and an altercation began between Carrillo and their sister, Candi Lopez. According to Monique, Candi "didn't want him there," the two were "pushing each other" around, and eventually Candi hit Carrillo either on his head or his shoulder with a broom or a mop. Monique witnessed her other brother, Marty, as well as her cousins, Jesse and Juan, attempt to separate Candi and Carrillo. Monique testified that their mother, Ofilia, also witnessed the altercation and at some point began screaming for her husband, Martin Garcia. Monique testified that she saw Garcia come out of the master bedroom, approach Carrillo, and begin to hit him repeatedly in the face. Monique then saw Marty, Jesse, and Juan attempt to separate Garcia and Carrillo. Monique testified that the fight soon moved from the living room to the kitchen, where it became increasingly violent, and later continued moving toward the master bedroom. Monique testified that she went to the kitchen to check on Ofilia, who had fainted. After leaving the kitchen, Monique found Garcia lying in the master bathroom "full of blood." Marty was also present, "[t]rying to pick [Garcia] up to move him to the bed." Monique testified that most everyone else, including Carrillo, had gone outside. When Marty removed Garcia's shirt, Monique observed stab wounds and "a lot" of blood on Garcia's chest.

Monique's statement to the police was admitted into evidence for the jury's consideration. In it, Monique told a different story. In the statement, Monique explained that, after

---

[1] With one exception discussed below, police statements from these family members, markedly inconsistent with their subsequent testimony, were admitted at trial for "record purposes only" and not considered by the jury. Our recitation of facts is derived from the trial testimony.

Candi said that she did not want Carrillo in the house, Carrillo approached Candi and "started to punch [her]." Candi began fighting back, and family members attempted to separate the two. The two were temporarily separated, but then Candi made a comment to Carrillo and he "started hitting [her] again," eventually throwing her "against the kitchen table" and pulling her hair. According to Monique's police statement:

> That was when Martin came out of his bedroom and approached [Carrillo] quickly and punched him to get him to let go of Candi. [Carrillo] let go of Candi and punched Martin back. . . . Martin stumbled and ended up against the refrigerator. When Martin turned around to face [Carrillo], [Carrillo] had already reached his hand into his pocket and pulled out a folding knife that was all silver. [Carrillo] opened the knife and charged toward Martin thrusting his hand toward Martin in a stabbing motion. Martin was stepping back to get out of [Carrillo's] way and that was when I saw Martin's shirt with blood on it in the stomach area. . . . [Carrillo] kept stabbing Martin. . . . [Carrillo] finally stopped and got up and went outside.

Candi Lopez also testified. Repeatedly saying that the incident "happened so fast," Candi recounted that she could not remember many of the details of what happened that night. After the State refreshed Candi's memory by showing her a copy of the statement she gave to the police, Candi did remember that when Carrillo and Garcia were fighting, Carrillo "pulled out a knife" and "started stabbing" Garcia. Candi testified that she did not see Garcia with a knife at any point during the incident.

Carrillo's cousin Juan Gutierrez testified that, after Garcia hit Carrillo, Carrillo "went up to him and started stabbing him." When asked how many times Carrillo stabbed Garcia, Gutierrez testified that Carrillo stabbed him "several times." Gutierrez also testified that

3

when Garcia ran away from the kitchen and into the bedroom, Carrillo followed Garcia and continued stabbing him.

The testimony of Carrillo's other cousin, Jesse Gutierrez, was largely consistent with the testimony of the other family members, although Jesse didn't remember seeing a knife until the end of the incident. Jesse testified that he witnessed Carrillo stabbing Garcia in the bathroom and that he and Monique unsuccessfully tried to take the knife away from Carrillo.

Carrillo's mother, Ofilia Garcia, testified repeatedly that she did not remember or did not know what happened the night of the incident. Ofilia admitted, however, that she saw her son stab Garcia "two or three" times.

Tanya Tarpley, the wife of Carrillo's grandfather, also testified. Like the other family members who witnessed the incident, Tarpley had difficulty in court remembering exactly what happened. At one point during her testimony, Tarpley explained that she was in the kitchen when Carrillo and Garcia were fighting with each other, and she "ran out the door" and hid because she "knew some [expletive] was going to start because, you know, Martin doesn't like [Carrillo] anyway." However, in her statement to the police, Tarpley stated that the reason she ran away was because Carrillo "had already hit [Tarpley] once before." Over an objection by defense counsel, the district court allowed Tarpley to testify to this prior inconsistent statement for the purpose of impeachment.

The jury also heard evidence from police officers who arrived at the crime scene. Officer Mark Horn was the first to arrive. Horn testified that Carrillo was found hiding underneath the trailer in which the family lived. Horn further testified that he located Garcia in the master

4

bedroom. Horn explained that Garcia "didn't look good" and, because Horn "was fearful that [Garcia] wasn't going to make it," he decided to ask Garcia who had stabbed him and record Garcia's statement using his car video camera in conjunction with his lapel audio transmitter. Horn testified that, when asked who his assailant was, Garcia answered, "Benito Carrillo." Over a Confrontation Clause objection by defense counsel, this statement was admitted into evidence as a "dying declaration." *See* Tex. R. Evid. 804(b)(2).

Travis County deputy medical examiner Elizabeth Peacock conducted the autopsy on Garcia and determined that Garcia sustained multiple wounds to his body, including a four-inch-deep stab wound on the back of his shoulder, a defensive stab wound on his finger,[2] and two fatal wounds to his chest area. Peacock testified that Garcia sustained a total of eight stab wounds and five other "cutting injuries that didn't go deep into the body."

The court's charge included instructions regarding the law of defense of a third person[3] and the law of self-defense.[4] The State argued during its closing statement that Candi was

---

[2] Peacock testified that a defensive wound is "a wound sustained usually to the extremities as the person undergoing an assault puts up their extremities between the assailant and the weapon and their vital areas."

[3] Texas law provides that a person is justified in using force or deadly force against another to protect a third person if:

> (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

> (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

Tex. Penal Code Ann. § 9.33 (West 2003). The court's charge included an instruction based on

5

being attacked by Carrillo and, therefore, that Garcia was justified in using force against Carrillo in order to protect Candi. *See* Tex. Penal Code Ann. § 9.33 (West 2003). The State made a generic reference to a person's right under the statute to use "force or deadly force" in defending a third person. While consistent with the penal code, the court's instruction regarding defense of third persons had omitted references to "deadly force." After the State made the reference to "deadly force," the district court interrupted the State's attorney, Ms. Powers, and offered the following clarification:

> THE COURT: Ms. Powers, let me also point out to the members of the jury, in terms of the charge that I gave you on defense of a third person, it doesn't have any reference to deadly force. I think—did you just put up the generic charge there?
>
> MS. POWERS: No, sir, we did not.

---

section 9.33 but omitted the references to "deadly force."

[4] Texas law provides that a person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

   (A) to protect himself against the other's use or attempted use of unlawful deadly force; or

   (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Tex. Penal Code Ann. § 9.32 (West 2003).

6

THE COURT: I noticed you kept on mentioning deadly force when you were reading from that. I don't have any of that in this defense of a third person since there is no allegation of deadly force being used by any party at that particular point.

MS. POWERS: That's correct.

THE COURT: So that's not to be considered.

MS. POWERS: That's correct. And as the judge pointed out to you, the testimony in this case shows that Martin never used deadly force, never used deadly force. You are justified in using force against force, the same level of force, to protect yourself against someone's assault or attack. If Martin reasonably believed that Candi was being assaulted and attacked with use of fist and hands, then he is justified in using his fists and hands in defending her, and that is what happened in this case.

Carrillo did not object to the district court's statements.

The jury found Carrillo guilty of murder as alleged in the indictment. During sentencing, Carrillo pleaded true to the enhancement paragraphs alleged in the indictment and the district court assessed punishment at fifty years' confinement. This appeal followed.

## DISCUSSION

### Factual sufficiency of the evidence

In his first issue, Carrillo asserts that the evidence is factually insufficient to support his conviction. Specifically, Carrillo claims that the evidence supports his theory that he was acting in self-defense when he stabbed Garcia. We disagree.

In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether

7

the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417. The fact-finder is the exclusive judge of the witnesses' credibility and the weight to be given to their testimony. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

When the issue of self-defense is submitted to the jury, we must also determine whether a rational trier of fact could have found against the defendant on that issue, that is, found beyond a reasonable doubt that the defendant's conduct was not justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

As a general rule, a person is justified in using deadly force in self-defense if he reasonably believes that deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force and if a reasonable person in his situation would not have retreated. Tex. Penal Code Ann. § 9.32 (West 2003).

Whether Carrillo reasonably believed that the use of deadly force was immediately necessary under the circumstances was a fact issue for the jury. *See Saxton*, 804 S.W.2d at 913-14. The evidence at trial established that Garcia was unarmed and never wielded a weapon at any point during the altercation with Carrillo. Multiple witnesses testified that, using his fists alone, Garcia fought Carrillo in response to Carrillo's physical confrontation with Candi. A rational jury could have concluded that Garcia's intervention did not justify Carrillo's decision to stab Garcia with a

8

knife, nor did it justify Carrillo's decision to pursue Garcia and continue to stab him with a knife after Garcia attempted to flee.

We find that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust and that the verdict is not against the great weight and preponderance of the evidence. Consequently, we hold that the evidence is factually sufficient to support Carrillo's conviction, and we overrule his first issue.

**Comments by the district court**

In his second issue, Carrillo asserts that the district court's clarifying remarks during the State's closing argument were improper and constituted reversible error. Carrillo relies on article 38.05 of the code of criminal procedure, which provides, in relevant part, that a trial judge shall not, "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979).

Carrillo has not preserved error on this issue. Unless fundamental error is present, "counsel must object to the trial judge's comments during trial in order to preserve error." *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000); *Williams v. State*, 191 S.W.3d 242, 251 (Tex. App.—Austin 2006, no pet.). In the context of article 38.05, fundamental error is present if the judge's comments imparted information to the jury that "tainted the presumption of innocence." *Blue*, 41 S.W.3d at 132. That is not the case here. The judge's comments simply clarified the law applicable to the case. The jury charge omitted the statutory term "deadly force" from its definition of "defense of a third person," but the State's attorney used that term in her closing argument and, in so doing, possibly confused the jury. The district court sought, with

9

its clarifying remarks, to avoid any confusion concerning the charge. The judge's comments did not taint Carrillo's presumption of innocence and, therefore, the district court did not commit fundamental error in making them.

Absent fundamental error, Carrillo needed to object during trial if he believed the judge's comments were improper. He did not; therefore, any error is waived. *See* Tex. R. App. P. 33.1(a). We overrule Carrillo's second issue.

**Admission of extraneous offense evidence**

In his third issue, Carrillo asserts that the district court erred in admitting evidence that Carrillo had previously hit Tanya Tarpley, one of the State's witnesses.

We review a trial court's decision regarding the admissibility of evidence for abuse of discretion. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

While evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith," it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). The list of exceptions under rule 404(b) is "neither mutually exclusive nor collectively exhaustive." *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (quoting *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990)).

10

As discussed above, Tarpley's statement to the police that she ran away from the fight because Carrillo "had already hit [Tarpley] once before" was admitted for the purpose of impeaching Tarpley's trial testimony with a prior inconsistent statement. *See* Tex. R. Evid. 613(a). Extraneous offense evidence may be admitted for impeachment purposes. *See Lopez v. State*, 928 S.W.2d 528, 536 (Tex. Crim. App. 1996). The district court, therefore, did not abuse its discretion in admitting the evidence for that purpose. Nor did the court abuse its discretion in failing to give an instruction limiting the jury's consideration of the statement to that purpose, as Carrillo did not request one. *See* Tex. R. Evid. 105(a) ("in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal."). We overrule Carrillo's third issue.

**Admission of Garcia's "dying declaration"**

In his fourth issue, Carrillo contends that the admission of Garcia's "dying declaration" identifying Carrillo as the assailant violated the Confrontation Clause of the Sixth Amendment.

We review alleged violations of the Confrontation Clause de novo. *See Wall v. State*, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006); *Muttoni v. State*, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.); *see also Lilly v. Virginia*, 527 U.S. 116, 137 (1999) (stating that courts should "independently review" whether out-of-court statements violate Confrontation Clause).

A "dying declaration" is admissible under the rules of evidence as an exception to the hearsay rule. Tex. R. Evid. 804(b)(2). However, whether a statement is admissible under the rules of evidence and whether the same statement is admissible under the Confrontation Clause are

11

separate questions. *See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004); *Wall*, 184 S.W.3d at 734-35. The question under the Confrontation Clause is whether an out-of-court statement is testimonial or nontestimonial in nature; testimonial statements implicate the Confrontation Clause, nontestimonial statements do not. *See Davis v. Washington*, 126 S. Ct. 2266, 2273-74 (2006).[5]

The State argues that, even if Garcia's dying declaration was testimonial, it should nevertheless have been admitted under the doctrine of forfeiture by wrongdoing. This doctrine is an "equitable exception" to the Confrontation Clause, and provides that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis*, 126 S. Ct. at 2280; *see Gonzalez v. State*, 195 S.W.3d 114, 117 (Tex. 2006), *cert. denied*, 127 S. Ct. 564 (2006). The doctrine is often applied to situations in which the defendant "committed the wrongdoing with the *intent* to procure the unavailability of the declarant as a witness." *Gonzalez*, 195 S.W.3d at 120 (emphasis added). However, the court of criminal appeals has recently expanded the doctrine, stating that it "may apply even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable." *Id*. at 125.

We need not address the applicability of the forfeiture-by-wrongdoing doctrine here. Even assuming, without deciding, that the admission of Garcia's dying declaration violated the Confrontation Clause, and that the doctrine of forfeiture by wrongdoing does not apply, any error

---

[5] The Supreme Court has explained that "[a]lthough many dying declarations may not be testimonial, there is authority for admitting even those that clearly are." *Crawford v. Washington*, 541 U.S. 36, 55 n.6 (2004). However, it has not yet decided the issue of whether the Sixth Amendment incorporates an exception for testimonial dying declarations, remarking that "[i]f this exception must be accepted on historical grounds, it is *sui generis*." *Id*. We need not decide this issue today.

12

in admitting the statement was harmless. The identity of the person who stabbed Garcia was never an issue at trial. Multiple witnesses testified to seeing Carrillo repeatedly stab Garcia. Carrillo's theory at trial was that he acted in self-defense. Carrillo made no attempt to claim that someone else stabbed Garcia and caused his death. Therefore, we hold that the admission of Garcia's dying declaration that Carrillo stabbed him did not contribute to his conviction or punishment and was harmless. *See* Tex. R. App. P. 44.2(a). We overrule Carrillo's fourth issue.

## CONCLUSION

Having overruled Carrillo's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:  February 23, 2007

Do Not Publish

13