COURT OF APPEALS












 
 
 
  
 
 
 




COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 JOEL GARCIA
 NUNEZ,
  
                             Appellant,
  
 v.
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-00-00433-CR
  
 Appeal from the
  
 Criminal District Court No. 2
  
 of Dallas County, Texas
  
 (TC# F-9946647-RI)
 
 




 

O P I N I O N

Appellant Joel Garcia Nunez appeals
his ninety-nine year sentence for first degree felony murder.  We affirm.

Facts








Nunez had a common law marriage with Berrios.  The two had
a son, and Nunez also supported Berrios=s son by another marriage.  Berrios and Nunez
lived together for seven years and Nunez considered Berrios
to be his wife.  At the time of the crime
in question, Nunez and Berrios were separated,
although Nunez frequently returned to Berrios=s apartment to see the children and
still stayed some nights with Berrios including the
night of the killing we consider here.

At some point, Nunez became
suspicious that Berrios was having an affair.  Another man, Manuel Martinez, began to call
their home late at night.  Nunez
testified these incidents, including Martinez taunting him that he was not man
enough for his wife, 
angered him.  Nunez also
had several run-ins with Martinez including an incident where Martinez
threatened to kill him.  These incidents
scared Nunez and he began to carry a gun.

On the night of the murder, Nunez
returned the children to Berrios=s apartment after spending the day
with them.  The door to the apartment was
locked.  When Berrios
finally opened the door, Nunez demanded to know what was going on.  Berrios refused to
answer.  Martinez appeared from inside
the apartment.  When Nunez saw Martinez,
he drew his gun and shot Martinez in the head at point blank range.  Nunez fled the scene and was apprehended several
months later.

Nunez was indicted for Martinez=s murder.  Nunez=s attorney orally moved for a trial
continuance because he had just finished a two-week trial and new evidence had
been produced by the prosecution which he had not had time to review and investigate.  The trial court denied the motion to
continue.








Nunez chose to plead guilty and the
case was submitted to a jury only on the punishment phase of trial.  During that trial, Nunez was cross-examined
by the State.  In the course of that
cross-examination, Nunez was asked whether he had ever beaten his wife.  Nunez denied that accusation but did testify
that his wife had been beaten in January 1999 by two men in a car.  At the end of Nunez=s testimony the defense rested.

The next day the State called Nunez
on rebuttal in an attempt to impeach him with some pictures taken of his wife
after the January assault.  Nunez=s counsel objected to Nunez being
called to the stand in the following fashion:

Your
Honor, we would object to the reasons why they want to call Mr. Nunez back to
testify.  The State wants to re-cross him
having already passed the witness and finished the cross-examination.  The only reason they want to cross him now is
to ask him about some pictures they didn=t have yesterday and they could have had them
yesterday, and we would object to him being recalled as a witness.  It=s not
for rebuttal, but to finish off what they couldn=t do yesterday.

 

The trial court denied the objection.

Ultimately, Nunez refused to recant
his story concerning his wife=s assault by other men. 
He did acknowledge that the pictures produced by the State were an
accurate representation of how his wife looked after she was beaten.  The State also proffered evidence of two 1992
felony convictions for possession and delivery of a small amount of cocaine.

On closing the State argued:

And let=s look at the similarities between the two offenses
that you heard of--okay?  Look at the
similarities. We=ve got two very violent crimes committed by a violent
person.  Two violent
crimes.  What else is similar
about them?  Each time he takes off and
is nowhere to be found.

 

Any
testimony you heard that Manuel was a violent man comes from the mouth of a
confessed killer, comes from the mouth of a convicted felon.

 








You=ve got no evidence whatsoever that Manuel was a violent
man, quite the contrary.  Quite the contrary.  The only person who had no respect for family, who beat the mother
of his child, who killed the father of a three year old boy.

 

He=s a
violent man.  So, what do you do with a
violent man who commits these type [sic] of crimes,
who has these prior first degree and second degree felony possession and
delivery of cocaine?  Not just
possession, but delivery--unlawful delivery of cocaine.  First degree and second
degree. So, he=s had a
first and he=s had a second chance already and you know what he
does with second chances.  What do you do
with somebody who has such disrespect for human life?

 

The jury rendered a verdict of ninety-nine years of
incarceration and a $10,000 fine. 

Nunez challenges his conviction with
four points of error.  First, that the
trial court erred by allowing the State to impeach Nunez on a collateral matter
and then permitting the State to contradict Nunez=s testimony by calling him as a
witness on rebuttal.  Second,
that the State should not have been permitted to call Nunez on
rebuttal.  Third, that the trial court
failed to conduct a side bar hearing to determine whether its extraneous
offense evidence was proved beyond a reasonable doubt.  Fourth, that Nunez was denied effective
assistance of counsel.

The
Use of Nunez=s Cross-Examination Answers for Rebuttal








Nunez first asserts the trial court
committed reversible error by allowing the State to cross-examine him on a
collateral matter in an effort to impeach him, and then using that testimony to
impeach him on rebuttal.[1]  As with all rulings concerning the admission
of evidence, we employ an abuse of discretion standard of review.  Allridge
v. State, 850 S.W.2d 471, 492 (Tex. Crim. App.
1991), cert. denied, 510 U.S. 831, 114 S.Ct.
101, 126 L.Ed.2d 68 (1993); Villalobos v. State, 999 S.W.2d 132, 134
(Tex. App.--El Paso 1999, no pet.).

We focus this discussion with a brief
review of the facts.  Nunez testified on
direct that he stayed with his wife at her mother=s home the evening before Martinez=s murder.  When he left the house that morning, Berrios was upset because they had argued about the
separation caused by Martinez.

On cross-examination and in the
absence of any objection by Nunez, the prosecutor accused Nunez of lying about
the reason for the separation from Berrios and
posited that the real reason for the break-up was because Nunez allegedly beat Berrios two months before Martinez=s murder.  Nunez denied the accusations.  The stated purpose for the cross-examination
was thus to demonstrate to the jury that Nunez was a liar.  At the end of the State=s cross-examination the defense
rested.








The next day the State called Nunez
on rebuttal using pictures of his wife taken after the alleged beating to
impeach the testimony from his cross-examination.  Defense counsel made the following objection
to Nunez being called as a rebuttal witness:

Your
Honor, we would object to the reasons why they want to call Mr. Nunez back to
testify.  The State wants to re-cross him
having already passed the witness and finished the cross-examination.  The only reason they want to cross him now is
to ask him about some pictures they didn=t have yesterday and they could have had them
yesterday, and we would object to him being recalled as a witness.  It=s not
for rebuttal, but to finish off what they couldn=t do yesterday.

 

The trial court denied the objection.

Nunez refused to recant his denial
that he had beaten his wife or that their separation was caused by the
beating.  He did acknowledge the pictures
produced by the State were an accurate representation of how his wife looked
after she was beaten.  On closing the
State argued that Nunez was a liar and a person capable of violent crime based
on the rebuttal testimony.  The trial
court=s charge contained a limiting
instruction to the jury requiring it to refuse to consider extraneous offense
or bad acts evidence introduced at trial unless they found that the State
proved up that evidence beyond a reasonable doubt.








As a general rule, witnesses may not
be impeached regarding collateral matters. 
Ramirez v. State, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990); Poole v. State, 974 S.W.2d 892,
905 (Tex. App.‑-Austin 1998, pet. ref=d).  However, when a witness gives misleading
testimony to create a false impression about a collateral matter, the witness
may be impeached on that matter in order to correct the false impression.  Poole, 974 S.W.2d at 905; see Ramirez,
802 S.W.2d at 676; Hammett v. State, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986). 
This kind of impeachment is only permissible when the witness
voluntarily testifies to the collateral matter. 
Lopez v. State, 928 S.W.2d 528, 531 (Tex. Crim. App. 1996). 
A party therefore cannot seek to impeach a witness by soliciting a
misleading response to a collateral matter on cross‑examination.  Id. 
Indeed, the Court of Criminal Appeals has held that A[t]he State may not rely on its own
questioning on cross-examination to contradict the defendant and get in
evidence collateral matters . . . which would otherwise be inadmissible.@ 
Shipman v. State, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980); Lopez, 928 S.W.2d at 531-32.

Two cases illustrate the application
of these principles.  In Shipman,
the defendant was asked by the prosecution on cross whether he had been
intoxicated in the last two or three years. 
The defendant responded, AI don=t think so.@ 
Shipman, 604 S.W.2d at 183.  The State was then permitted to impeach the
defendant by showing he had been convicted of a DWI in the last two years.  Id. 
The Court of Criminal Appeals found that the false impression exception
did not apply because the defendant=s misleading response was elicited by
the State on cross-examination.  Shipman,
604 S.W.2d at 184-85. 
Under those circumstances, the Court of Criminal Appeals held the State=s use of the DWI conviction to
contradict the defendant=s testimony on cross was harmful error and reversed and
remanded the case.








Similarly in Lopez, the State
sought to correct an allegedly false impression left by the defendant on direct
concerning his use of drugs by introducing evidence of an incident where he
jumped naked into his ex-girlfriend=s bed while on drugs.  Lopez, 928 S.W.2d at
531-32.  The State also claimed
the evidence demonstrated the defendant=s motive for the murder for which he
was being tried.  Id.
at 532.

The Court of Criminal Appeals held
that although defendant had answered questions concerning drugs on direct, he
did not volunteer any information about his personality while on drugs, or the specific incident with his girlfriend.  Id. 
The Lopez court therefore reversed and remanded for a harm
analysis with regard to the prior misconduct because the Afalse impression@ created by defendant=s testimony on cross arose because of
Aprompting or maneuvering@ by the State.  Id.








The controlling legal principle we
extract from these cases is straightforward. When the defendant Avoluntarily . . . [and] without any
prompting or maneuvering by the prosecutor@ testifies on either direct or cross
as to prior criminal behavior, the State may correct any false impression
created by that testimony concerning that behavior.  Martinez v. State, 728 S.W.2d 360,
361-62 (Tex. Crim. App. 1987); Lopez, 928
S.W.2d at 532; see Shipman, 604 S.W.2d at 185; but see Grigsby v.
State, 653 S.W.2d 43, 44 (Tex. Crim. App. 1983)
(Miller, J. dissenting) (false impression testimony can only be elicited on
direct, not cross, relying on Shipman); Pyles
v. State, 755 S.W.2d 98, 114-15 (Tex. Crim. App.
1988) (en banc) (direct testimony triggers State=s right to cross-examine on
collateral matters).

Here, Nunez never volunteered
information about the specific episode where he allegedly beat his wife.  See Lopez, 928 S.W.2d at 531-32; Pyles, 755 S.W.2d at 115 (State permitted to
introduce collateral matters evidence because defendant created false
impression as to his violent tendencies on direct).  Furthermore, his direct testimony that
Martinez created a rift between him and his wife that led to their separation
did not create a false impression concerning any other prior criminal activity,
especially because there was no evidence that Nunez=s separation from his wife was the
result of the alleged assault two months prior to Martinez=s murder.

Lastly, because we cannot overturn a
trial court=s decision to admit evidence if that
evidence was admissible for any other reason, we address the State=s contention that the photographs of Berrios after the alleged beating were admissible to
undercut Nunez=s sudden passion defense or to
demonstrate his state of mind when he murdered Martinez. See Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim.
App. 1990).  We find no logical
connection between Nunez allegedly hitting his wife after a marital argument,
not the murder victim, with a telephone, not a gun, two months prior to
Martinez=s murder.  This conclusion is reinforced by the fact
that the circumstances under which the two incidents occurred were completely
dissimilar.  See Lopez, 928 S.W.2d at 532.








For these reasons, we are inclined to
find that the State=s use of collateral matters was improper and that it did work
harmful error in the trial.  Without the
disputed testimony, the State would not have been able to argue that Nunez had
violent propensities and was not being truthful with the jury.  Such testimony was clearly damaging and
resulted in reversible error in the punishment phase.

Nevertheless, we are constrained from
reversing and remanding this case because Nunez did not object to the
introduction of the collateral matters on cross-examination, did not lodge an
appropriate objection concerning the State=s use of the photographic evidence on
rebuttal, and did not ask for a side bar hearing to determine whether the State
had proven its extraneous evidence beyond a reasonable doubt.  Although Nunez now raises all these issues on
appeal, his failure to do so in the trial court divests us of the authority to
provide him redress on those bases. 
Point of Error One is thus overruled.

Allowing
the State to Call Nunez on Rebuttal

In Point of Error Two, Nunez asserts
that the State violated his constitutional rights against self-incrimination by
calling him on rebuttal after the defense rested.  We assume for the purposes of this discussion
that Nunez=s objection to the introduction of
the photographic evidence on rebuttal properly preserved this point for our
review.








It is fundamental that the State may
not call the defendant as a witness, nor may the defendant be compelled to
testify at trial and give evidence against himself or
herself. Newton v. State, 629 S.W.2d 206, 207 (Tex. App.--Dallas), rev=d on other grounds, 641 S.W.2d 530 (Tex. Crim. App. 1982); Bryan v. State, 837 S.W.2d 637,
643 (Tex. Crim. App. 1992).  However, the defendant=s Fifth Amendment right may be waived
as long as that waiver is knowingly, voluntarily, and intelligently made.  Bryan, 837 S.W.2d at
643; Brumfield v. State, 445 S.W.2d 732, 735 (Tex. Crim.
App. 1969).

When the defendant voluntarily
testifies before a jury, he is subject to the same rules that govern the direct
and cross-examination of any other witness. 
Bryan, 837 S.W.2d at 643.  He may therefore be Acontradicted, impeached, discredited,
attacked, sustained, bolstered up, made to give evidence against himself,
cross-examined as to new matter, and treated in every respect as any other
witness testifying, except where there are overriding constitutional or
statutory prohibitions.@  Brown
v. State, 617 S.W.2d 234, 236 (Tex. Crim. App.
1981); Bryan, 837 S.W.2d at 643.

The record in this case demonstrates
that Nunez knowingly, voluntarily, and intelligently took the stand on his own
behalf in a unitary proceeding, the punishment phase of the trial.  Bryan, 837 S.W.2d at 643-44 (waiver
may be reclaimed if defendant reasserts Fifth Amendment rights in another phase
of trial).  Under such circumstances,
Nunez effectively waived his protections against self-incrimination.  Point of Error Two is therefore overruled.

Failure
to Conduct an Evidentiary Hearing

In his third point of error, Nunez
contends the trial court committed reversible error by failing to hold a
hearing to determine if the State could prove beyond a reasonable doubt that
Nunez beat his wife.  The State contends
this error was waived for lack of a timely request by Nunez to hold such a
hearing.








We cannot consider a complaint on
appeal that was not first raised before the trial court in a timely and
specific manner.  Tex. R. App. P. 33.1. 
Nunez did request that a hearing outside the presence of the jury be
held if the State sought to introduce any extraneous offense materials via a
motion in limine, and the trial court did grant that
request.  However, the record is clear
that no request for a hearing or other objection was made by Nunez to the
introduction of the extraneous offense evidence either before the State began
its cross-examination, or after the State sought introduction of the
photographs on rebuttal.[2]  Because Point of Error Three was not
preserved, it is overruled. 

Ineffective
Assistance of Counsel

Nunez=s fourth point of error raises an
ineffective assistance of counsel claim. 
He urges that counsel=s failure to ask for a hearing on the admissibility of the
extraneous offense evidence or object properly constitutes a Asingle error [that] so permeated the
proceedings@ that his sentence should be reversed
and the punishment phase remanded for a new determination.  Jackson v. State,
766 S.W.2d 504, 506 (Tex. Crim. App. 1985).








The Asingle error@ cases cited by Nunez do not support
his position because the Court of Criminal Appeals has consistently held that
ineffective assistance of counsel claims cannot be reviewed if there is no
record to demonstrate counsel=s strategy at trial. Ex parte Varelas, 45 S.W.3d 627,
632 (Tex. Crim. App. 2001); Thompson v. State,
9 S.W.3d 808, 814 (Tex. Crim. App. 1999).  The record is silent on this point, and Nunez
did not request a post-verdict hearing on the matter.  See, e.g., Jackson, 766 S.W.2d
at 505-06.    Without a record, Nunez
cannot rebut the presumption that his counsel employed a sound trial strategy
and was not deficient in his performance at trial.  Strickland v. Washington,
466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d
674 (1984); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Point of Error Four is therefore overruled.

Conclusion

Nunez=s sentence is therefore affirmed.

 

                                                                         

SUSAN
LARSEN, Justice

August 22, 2002

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 

(Do Not Publish)

 











[1]Significantly,
Nunez did not challenge the relevance or admissibility of the evidence at
trial.  Had he done so, the State would
have had to satisfy the trial court that the extraneous offense evidence was
relevant apart from its character conformity value, in this case, the State=s contention that Nunez was a liar and
a violent person.  Montgomery
v. State, 810 S.W.2d 372, 387 (Tex. Crim. App.
1990); Roberts v. State, 29 S.W.3d 596, 600-01 (Tex. App.--Houston [1st
Dist.] 2000, pet. ref=d).  On appeal the State asserts the disputed
evidence also rebutted Nunez=s
sudden passion defense by demonstrating the relationship between the parties
and Nunez=s state
of mind at the time he killed Martinez. 
Proper rebuttal evidence in this context can include the introduction of
similar extraneous offenses if they have Acommon
characteristics with the offense for which the defendant was on trial.@ 
Roberts, 29 S.W.3d at 601; Mares v. State,
758 S.W.2d 932, 936 (Tex. App.--El Paso 1988, pet. ref=d).  Under either analysis, we find the alleged
evidence that Nunez beat his wife two months before Martinez=s murder irrelevant because the time
frame for the two events is too attenuated and because the two events lack of
common characteristics.





[2]Although
a bench conference apparently did take place prior to the State=s cross-examination, it is not
contained in the record.  Errors
demonstrated by facts not in the record, must be preserved by a motion for new
trial.  Tex.
R. App. P. 21.2.  Nunez=s sole point in his motion for new
trial challenged the verdict as contrary to the law and the evidence.  If the side bar discussion was about the
evidence in dispute in this case, it is therefore not preserved for our
review.  Mata v.
State, 867 S.W.2d 798, 803 (Tex. App.--El Paso 1993, no pet.).