

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00323-CR

**MICHAEL SHAWN SADLER,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

From the 220th District Court
Bosque County, Texas
Trial Court No. 14104

## MEMORANDUM OPINION

A jury convicted Michael Shawn Sadler of murder and assessed his punishment at thirty years' imprisonment. Sadler argues on appeal that the court erred by: (1) admitting evidence of an extraneous offense; (2) permitting the State to impeach his fiancé on a collateral issue; (3) admitting various hearsay statements which did not qualify under exceptions for excited utterances, statements made for purposes of medical diagnosis or treatment, or dying declarations; (4) admitting a videotaped interview of the victim in violation of Sadler's right of confrontation; and (5) admitting

a prior written statement which was not inconsistent with his testimony. We will affirm.

## Background

Sadler, Luis Castillo, and others were attending a gathering on a Saturday night at the apartment of Rachel Byrd. At some point, an argument arose between Sadler and Castillo which involved some pushing and shoving. The party ended around 1:30 or 2:00 in the morning. When Sadler left, he called Byrd and told her that Castillo was injured and lying in the parking lot. Byrd and Larry Whatley went out and found Castillo lying on the ground, injured badly, and unable to move his arms or legs. Castillo told them that Sadler had assaulted him. He did not want to seek medical attention so they carried him into Byrd's apartment.

Around 8:00 or 8:30 that morning, Byrd called for an ambulance, and Castillo was taken to the local hospital in Clifton. Because of the extent of his injuries, he was later transported to Scott & White Hospital in Temple. The treating physician at Scott & White testified that Castillo essentially suffered a broken neck. He was placed on a ventilator within a few hours after his arrival at Scott & White.

Clifton Police Chief Rex Childress received a call from Scott & White on Wednesday advising that Castillo was about to be taken off the ventilator at his own request and that he may not survive for long afterward. Childress went to the hospital to conduct a videotaped interview that afternoon. During the interview, Castillo indicated that Sadler had assaulted him.

With limited treatment options available, Castillo was taken off the ventilator. He died about two weeks after the assault.

## Extraneous Offense

Sadler contends in his first point that the court abused its discretion by admitting evidence that Whatley and he had smoked methamphetamine in Byrd's apartment.

Sadler arrived at Byrd's apartment around 11:30 that night. Byrd testified over objection that Sadler asked her for a piece of tin foil and that Whatley and Sadler then went into the bathroom and closed the door. Although she did not see what they did with the foil, she testified over objection that she assumed they used the foil to smoke methamphetamine. At some point thereafter, Sadler got into the argument with Castillo. Byrd and Whatley estimated that Sadler called Byrd around 1:30 in the morning to tell her that Castillo was lying in the parking lot. Castillo's treating physician at Scott & White testified that a person who uses methamphetamine "can exhibit irrational and volatile type behavior."

The court admitted Byrd's and Whatley's testimony as relevant to Sadler's state of mind under article 38.36 of the Code of Criminal Procedure and, at Sadler's request, provided a limiting instruction to the jury both at the time the evidence was admitted and again in the charge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon 2005) (in murder prosecution, State may offer evidence relevant to "the condition of the mind of the accused at the time of the offense").

Sadler contends that this evidence is inadmissible under the reasoning of *Lopez v. State*. 928 S.W.2d 528 (Tex. Crim. App. 1996). In that case, the State offered evidence

that a murder defendant had used drugs on a different occasion[1] and argued that this evidence was relevant to show the defendant's motive. *Id.* at 530-32. The Court held that this evidence was irrelevant because there was no evidence that Lopez was under the influence of drugs when the murder occurred. *Id.* at 532.

Sadler's case is different. He used methamphetamine within one and one-half or two hours before Castillo was assaulted. The doctor testified that methamphetamine use can lead to "irrational" or "volatile" behavior. Thus, we cannot say that the court abused its discretion by admitting this evidence on the issue of Sadler's state of mind at the time of the offense. *See Saxer v. State*, 115 S.W.3d 765, 776-79 (Tex. App.—Beaumont 2003, pet. ref'd) (evidence held admissible regarding defendant's methamphetamine usage "several hours" before murder). Sadler's first point is overruled.

### Impeachment on Collateral Issue

Sadler argues in his second point that the court abused its discretion by permitting the State to cross-examine his fiancé about a collateral issue. The State responds that this issue has not been preserved for our review.

On cross-examination, the prosecutor asked the fiancé whether Sadler was a violent person or whether he had ever been violent toward her. She said no to both questions. When she conceded that she had once reported him to the police, the prosecutor showed her the sworn statement she had given on that occasion and

---

[1] It is unclear from the opinion of the Court of Criminal Appeals when Lopez had engaged in the drug usage at issue, nor is this chronological information ascertainable from the lower court's opinion on remand. *See Lopez v. State*, 928 S.W.2d 528, 530-32 (Tex. Crim. App. 1996); *Lopez v. State*, 939 S.W.2d 775, 776-77 (Tex. App.—Austin 1997, no pet.). The lower court's earlier decision was unpublished. *See Lopez*, 928 S.W.2d at 530.

discussed several of the things she said in the statement. The court admitted the statement in evidence over Sadler's objection that it violated the best evidence rule. When the prosecutor started reading the statement, Sadler made a relevance objection which was implicitly overruled because the prosecutor was allowed to continue reading. *See* TEX. R. APP. P. 33.1(a)(2)(A). In the statement, the fiancé told of an argument during which Sadler had threatened to "beat the hell out of [her] and any cops that get in [his] way."

> The standards of procedural default . . . are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Rivas v. State*, 275 S.W.3d 880, 882 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (1992)).

Though we are not to "split hairs," Sadler's general relevance objection is not sufficiently specific to preserve this issue for appellate review. *See Barnard v. State*, 730 S.W.2d 703, 716 (Tex. Crim. App. 1987); *Marcel v. State*, No. 01-00-1140-CR, 2001 Tex. App. LEXIS 8590, at *5-6 (Tex. App.—Houston [1st Dist.] Dec. 27, 2001, pet. ref'd) (not designated for publication).[2] Sadler's second point is overruled.

### Excited Utterances

Sadler contends in his third point that the court abused its discretion by admitting the testimony of six witnesses regarding hearsay statements Castillo made to

---

[2] Other portions of the opinion in *Marcel* were designated for publication. *See Marcel v. State*, 64 S.W.3d 677 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

them identifying Sadler as his assailant. Specifically, Sadler argues that these statements are not admissible as excited utterances because they were made in response to questioning and because there is nothing to suggest that Castillo was still under the stress of excitement caused by his assault. Here, we will limit our discussion to the testimony of four witnesses whose testimony is either admissible under the excited utterance exception to the hearsay rule or not at all.

Byrd and Whatley went out to find Castillo after receiving Sadler's phone call. Whatley testified over objection that Castillo told him "Michael beat me" when Whatley found him in the parking lot. According to Whatley, Castillo also said, "Help me. Help me. Please, help me." Byrd testified over objection that Castillo said "Michael tried to kill me." According to Byrd, he said, "Oh help me" when they first got to him. She testified, without objection, that Castillo repeated this statement after they took him inside her apartment. Byrd testified that Castillo was "suffering" and "moaning" as he lay in her apartment.

Byrd's friend Tammy Rhodes came over after daylight the next morning. Rhodes testified without objection that Castillo said "Michael tried to kill me." Rhodes repeated the statement a few moments later over Sadler's objection. Rhodes later repeated the statement a third time without objection. Rhodes did not offer any testimony regarding Castillo's emotional state that morning. Because Sadler failed to object two of the three times Rhodes testified about Castillo's statement, we hold that

Sadler failed to preserve his complaint with regard to Rhodes's testimony.[3] *See* TEX. R. APP. P. 33.1(a)(1).

Castillo's friend Misty Bronstad came to see him in the emergency room around noon on Sunday. She testified that he "was visibly in pain," appeared to be under the stress of "being beaten up," and "was in shock." Over objection, she testified that Castillo told her that Sadler "tried to kill me" when she asked him what had happened.

Rule of Evidence 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2).

> To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement is made. Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving.

*Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005) (quoting *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003)).

Whatley's and Byrd's testimony both indicate that Castillo was bloody, in severe pain, and pleading for help when he made the statements to them. *See Gonzalez v. State*, 155 S.W.3d 603, 608 (Tex. App.—San Antonio 2004), *aff'd on other grounds*, 195 S.W.3d 114 (Tex. Crim. App. 2006). No one could attach a precise timeframe to the events of

---

[3] In the alternative, we would hold that any error in admitting the statement on the one occasion Sadler objected was rendered harmless by the two other instances when the statement was admitted without objection. *See Leday v. State*, 983 S.W.2d 713, 718 nn.6-7 (Tex. Crim. App. 1998) (erroneous admission of evidence is generally rendered harmless when similar evidence is admitted without objection); *Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref'd) (same); *Webster v. State*, 26 S.W.3d 717, 723 (Tex. App.—Waco 2000, pet. ref'd) (same).

the evening, but it would have been within the court's discretion to conclude that less than an hour had passed since Castillo was assaulted. Although Castillo made the statements in response to Whatley's and Byrd's general questions about what had happened, there is nothing in the record to indicate that they asked these questions for any reason other than personal concern, and there is nothing to indicate that Castillo's responses were anything but spontaneous. *See Apolinar*, 155 S.W.3d at 190; *Gonzalez*, 155 S.W.3d at 608. And finally, there is nothing in the record to suggest that Castillo harbored any self-serving motive when he made these statements. *See Apolinar*, 155 S.W.3d at 190-91.

Castillo made the statement to Bronstad about ten or eleven hours after he was assaulted. While this length of time is closer to the outer bounds of the time at which a statement may be found to qualify as an excited utterance, the passage of time, standing alone, is not determinative. *See Mayfield v. State*, No. 04-02-00635-CR, 2003 Tex. App. LEXIS 7660, at *5-6 (Tex. App.—San Antonio 2003, pet. ref'd) (not designated for publication) (statement made after 10 hours was admissible); *Snellen v. State*, 923 S.W.2d 238, 242-43 (Tex. App.—Texarkana 1996, pet. ref'd) (statement made after 12-13 hours admissible). At the time, Bronstad noted that Castillo was in pain, appeared to still be under the stress of the assault, and was in shock. As with Whatley and Byrd, Castillo made the statement in response to Bronstad's questions, but there is nothing in the record to indicate that Bronstad asked these questions for any reason other than personal concern, and there is nothing to indicate that Castillo's responses were anything but spontaneous. *See Apolinar*, 155 S.W.3d at 190; *Gonzalez*, 155 S.W.3d at 608.

And as with Whatley and Byrd, there is nothing in the record to suggest that Castillo harbored any self-serving motive when he made the statement to Bronstad. *See Apolinar*, 155 S.W.3d at 190-91.

Accordingly, we cannot say that the court abused its discretion by admitting the statements made to Whatley, Byrd, and Bronstad as excited utterances. *Id.*; *Gonzalez*, 155 S.W.3d at 607-08.

## Medical Diagnosis or Treatment

In response to Sadler's third point, the State contends that the testimony of one of the witnesses fits within the hearsay exception for statements made for purposes of medical diagnosis or treatment.

A nurse helped translate for Castillo in the emergency room around 9:30 that morning. Over objection, she testified that, when she asked him what had happened, he hesitated then told her he had been robbed. He initially declined to identify the perpetrator, but at her urging, he identified "Michael" as the person who had done it. But he added that he did not want to press charges for fear Michael's father (whom he named) would "come and kill me." The nurse then asked Castillo how it happened, and Castillo briefly described how Sadler had assaulted him.

Rule 803(4) defines statements made for purposes of medical diagnosis or treatment as follows:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

TEX. R. EVID. 803(4).

Statements similar to those made by Castillo to the nurse have been consistently held admissible as statements made for purposes of medical diagnosis or treatment under Rule 803(4).  *See, e.g., Guzman v. State*, 253 S.W.3d 306, 307-09 (Tex. App.—Waco 2008, no pet.); *Reyes v. State*, 48 S.W.3d 917, 922 (Tex. App.—Fort Worth 2001, no pet.). Accordingly, we cannot say that the court abused its discretion by admitting the nurse's testimony about the statements Sadler made to her.

We have addressed the admissibility of the testimony of five of the six witnesses whose testimony Sadler challenges in his third point.  We will address the remaining witness's testimony in connection with Sadler's fourth point.  Sadler's third point is overruled.

**Dying Declaration**

Sadler argues in his fourth point that the court abused its discretion by admitting the testimony of Beki Bollinger under the dying declarations exception to the hearsay rule.[4]  Specifically, Sadler contends that Bollinger's testimony is not admissible under this exception because there is nothing to suggest that Castillo believed his death was imminent when he talked to her.

---

[4]  In a hearing outside the presence of the jury, the court initially determined Bollinger's testimony to be admissible under the excited utterance exception.  Before the jury, the State argued that the testimony was also admissible as a dying declaration, and the court overruled a subsequent objection under this theory.  We must uphold a trial court's evidentiary ruling if it is correct under any theory of law applicable to the case.  *See Ruffin v. State*, 270 S.W.3d 586, 597 (Tex. Crim. App. 2008).

Bollinger was Castillo's employer. She came to see him at Scott & White on Monday morning. Over objection, Bollinger testified that, when she asked Castillo who had assaulted him, she read his lips to indicate that "Michael" had done it.[5] *See* TEX. R. EVID. 801(a) (defining in part a "statement" for purposes of the hearsay rule as "nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression"). Bollinger continued to talk with Castillo about the assault.

> After Luis had been read his last rites, and made the decision to have the ventilator taken off of him and he knew that it was a possibility he was going to pass I was standing by his side and [at] that moment he could speak. And I asked him, "Luis, why did Michael do this to you?"

Over Sadler's objection, Bollinger was permitted to tell the jury Castillo's answer, which was, "Michael probably gottie too much mad."[6]

> A statement meets the dying declaration exception to the hearsay rule if the declarant is unavailable at the time of trial and the statement is "[a] statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." . . . A declarant's belief that death was imminent "may be inferred from the circumstances of the case, such as the nature of the injury, medical opinions stated to him, or his conduct."

*Martinez v. State*, 17 S.W.3d 677, 689 (Tex. Crim. App. 2000) (quoting TEX. R. EVID. 804(b)(2); *Thomas v. State*, 699 S.W.2d 845, 853 (Tex. Crim. App. 1985)) (citations omitted).

Here, Castillo was unavailable at trial because of his death. It is undisputed that his injuries were severe and his prognosis was grim. Given the extent of his injuries,

---

[5] At the time, Castillo had a breathing tube "in the side of his mouth" and was "whispering somewhat."

[6] Bollinger explained that Luis spoke only broken English.

Bollinger's impression that he knew there was a possibility he would die after being removed from the ventilator, and the giving of last rites, we cannot say that the court abused its discretion by admitting Bollinger's testimony under the dying declarations exception to the hearsay rule. *See id.*; *Medrano v. State*, 701 S.W.2d 337, 339 (Tex. App.—El Paso 1985, pet. ref'd). Sadler's fourth point is overruled.

## Right of Confrontation

Sadler contends in his fifth point that the admission of Chief Childress's videotaped interview of Castillo violated his Sixth Amendment right of confrontation. The State responds that this issue has not been preserved for appellate review.

The court conducted a hearing outside the presence of the jury to determine the admissibility of this evidence. Sadler objected that the evidence did not qualify as a dying declaration and that its probative value was substantially outweighed by the danger of "unfair sympathy" among the jurors given Castillo's condition. Sadler did not state an objection on confrontation grounds. Thus, he failed to preserve this issue for appellate review. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); *Ayala v. State*, 267 S.W.3d 428, 437 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Sadler's fifth point is overruled.

## Impeachment with Prior Consistent Statement

Sadler argues in his sixth point that the court abused its discretion by permitting the State to impeach him with a prior written statement that was not inconsistent with his testimony.

On cross-examination, Sadler denied using methamphetamine on the night of the offense but testified that he got nervous when he heard he was a suspect and used methamphetamine two nights later, not long before he reported to jail. Over Sadler's objection, the court admitted his written statement in which he admitted to using methamphetamine "on or about Oct 23."

Sadler contends that it was impermissible to admit his written statement under Rule of Evidence 613 because he "unequivocally admitted to using methamphetamine." Rule 613(a) provides:

> In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2).

Tex. R. Evid. 613(a).

Sadler focuses on his admission that he *engaged in the conduct* referred to in his statement. Rule 613(a) focuses on whether the witness admits having *made the statement* in question. Nevertheless, Sadler readily conceded in his cross-examination by the prosecutor that the statement was his. He then explained why his interpretation of the statement varied from the prosecutor's.

Sadler "unequivocally admitted" having made the statement though he disputed its meaning. It would seem, then, that under Rule 613(a) the statement itself was not to

be admitted. *Id.* However, the next sentence of the rule states, "This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2)." *Id.*

Rule 801(e)(2)(A) defines an admission of a party-opponent as a statement "offered against a party" which is "the party's own statement." *Id.* 801(e)(2)(A). Thus, Sadler's statement qualifies as an admission of a party-opponent under the rule. *See id.*; *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999); *Strong v. State*, 138 S.W.3d 546, 553-54 (Tex. App.—Corpus Christi 2004, no pet.). Because the statement was an admission of a party-opponent, Rule 613 did not apply. *Strong*, 138 S.W.3d at 553-54. Sadler's sixth point is overruled.

We affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed April 29, 2009
Do not publish
[CRPM]