IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00323-CR

 

Michael Shawn Sadler,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 220th District
Court

Bosque County, Texas

Trial Court No. 14104

 



MEMORANDUM Opinion



 








            A jury convicted Michael
Shawn Sadler of murder and assessed his punishment at thirty years’
imprisonment.  Sadler argues on appeal that the court erred by: (1) admitting
evidence of an extraneous offense; (2) permitting the State to impeach his fiancé
on a collateral issue; (3) admitting various hearsay statements which did not
qualify under exceptions for excited utterances, statements made for purposes
of medical diagnosis or treatment, or dying declarations; (4) admitting a
videotaped interview of the victim in violation of Sadler’s right of
confrontation; and (5) admitting a prior written statement which was not
inconsistent with his testimony.  We will affirm.

Background

            Sadler, Luis Castillo, and
others were attending a gathering on a Saturday night at the apartment of
Rachel Byrd.  At some point, an argument arose between Sadler and Castillo
which involved some pushing and shoving.  The party ended around 1:30 or 2:00
in the morning.  When Sadler left, he called Byrd and told her that Castillo
was injured and lying in the parking lot.  Byrd and Larry Whatley went out and
found Castillo lying on the ground, injured badly, and unable to move his arms
or legs.  Castillo told them that Sadler had assaulted him.  He did not want to
seek medical attention so they carried him into Byrd’s apartment.

            Around 8:00 or 8:30 that
morning, Byrd called for an ambulance, and Castillo was taken to the local
hospital in Clifton.  Because of the extent of his injuries, he was later
transported to Scott & White Hospital in Temple.  The treating physician at
Scott & White testified that Castillo essentially suffered a broken neck. 
He was placed on a ventilator within a few hours after his arrival at Scott
& White.

            Clifton Police Chief Rex
Childress received a call from Scott & White on Wednesday advising that
Castillo was about to be taken off the ventilator at his own request and that
he may not survive for long afterward.  Childress went to the hospital to
conduct a videotaped interview that afternoon.  During the interview, Castillo indicated
that Sadler had assaulted him.

            With limited treatment
options available, Castillo was taken off the ventilator.  He died about two
weeks after the assault.

Extraneous Offense

            Sadler contends in his first
point that the court abused its discretion by admitting evidence that Whatley
and he had smoked methamphetamine in Byrd’s apartment.

            Sadler arrived at Byrd’s
apartment around 11:30 that night.  Byrd testified over objection that Sadler
asked her for a piece of tin foil and that Whatley and Sadler then went into the
bathroom and closed the door.  Although she did not see what they did with the
foil, she testified over objection that she assumed they used the foil to smoke
methamphetamine.  At some point thereafter, Sadler got into the argument with
Castillo.  Byrd and Whatley estimated that Sadler called Byrd around 1:30 in
the morning to tell her that Castillo was lying in the parking lot.  Castillo’s
treating physician at Scott & White testified that a person who uses
methamphetamine “can exhibit irrational and volatile type behavior.”

            The court admitted Byrd’s
and Whatley’s testimony as relevant to Sadler’s state of mind under article
38.36 of the Code of Criminal Procedure and, at Sadler’s request, provided a
limiting instruction to the jury both at the time the evidence was admitted and
again in the charge.  See Tex.
Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005) (in murder
prosecution, State may offer evidence relevant to “the condition of the mind of
the accused at the time of the offense”).

            Sadler contends that this
evidence is inadmissible under the reasoning of Lopez v. State.  928
S.W.2d 528 (Tex. Crim. App. 1996).  In that case, the State offered evidence
that a murder defendant had used drugs on a different occasion[1]
and argued that this evidence was relevant to show the defendant’s motive.  Id. at 530-32.  The Court held that this evidence was irrelevant because there was
no evidence that Lopez was under the influence of drugs when the murder
occurred.  Id. at 532.

            Sadler’s case is different. 
He used methamphetamine within one and one-half or two hours before Castillo
was assaulted.  The doctor testified that methamphetamine use can lead to
“irrational” or “volatile” behavior.  Thus, we cannot say that the court abused
its discretion by admitting this evidence on the issue of Sadler’s state of
mind at the time of the offense.  See Saxer v. State, 115 S.W.3d 765,
776-79 (Tex. App.—Beaumont 2003, pet. ref’d) (evidence held admissible
regarding defendant’s methamphetamine usage “several hours” before murder). 
Sadler’s first point is overruled.

Impeachment on Collateral Issue

            Sadler argues in his second
point that the court abused its discretion by permitting the State to
cross-examine his fiancé about a collateral issue.  The State responds that
this issue has not been preserved for our review.

            On cross-examination, the prosecutor
asked the fiancé whether Sadler was a violent person or whether he had ever
been violent toward her.  She said no to both questions.  When she conceded
that she had once reported him to the police, the prosecutor showed her the
sworn statement she had given on that occasion and discussed several of the
things she said in the statement.  The court admitted the statement in evidence
over Sadler’s objection that it violated the best evidence rule.  When the
prosecutor started reading the statement, Sadler made a relevance objection
which was implicitly overruled because the prosecutor was allowed to continue
reading.  See Tex. R. App. P. 33.1(a)(2)(A). 
In the statement, the fiancé told of an argument during which Sadler had
threatened to “beat the hell out of [her] and any cops that get in [his] way.”            

            The standards of procedural
default . . . are not to be implemented by splitting hairs in the appellate
courts. As regards specificity, all a party has to do to avoid the forfeiture
of a complaint on appeal is to let the trial judge know what he wants, why he
thinks himself entitled to it, and to do so clearly enough for the judge to
understand him at a time when the trial court is in a proper position to do
something about it.

 

Rivas v. State, 275 S.W.3d 880, 882 (Tex. Crim. App.
2009) (quoting Lankston v. State, 827 S.W.2d 907, 909 (1992)).

            Though we are not to “split
hairs,” Sadler’s general relevance objection is not sufficiently specific to
preserve this issue for appellate review.  See Barnard v. State, 730
S.W.2d 703, 716 (Tex. Crim. App. 1987); Marcel v. State, No. 01-00-1140-CR,
2001 Tex. App. LEXIS 8590, at *5-6 (Tex. App.—Houston [1st Dist.] Dec. 27, 2001,
pet. ref’d) (not designated for publication).[2] 
Sadler’s second point is overruled.

Excited Utterances

            Sadler contends in his third
point that the court abused its discretion by admitting the testimony of six
witnesses regarding hearsay statements Castillo made to them identifying Sadler
as his assailant.  Specifically, Sadler argues that these statements are not
admissible as excited utterances because they were made in response to
questioning and because there is nothing to suggest that Castillo was still
under the stress of excitement caused by his assault.  Here, we will limit our
discussion to the testimony of four witnesses whose testimony is either
admissible under the excited utterance exception to the hearsay rule or not at
all.

            Byrd and Whatley went out to
find Castillo after receiving Sadler’s phone call.  Whatley testified over
objection that Castillo told him “Michael beat me” when Whatley found him in
the parking lot.  According to Whatley, Castillo also said, “Help me.  Help
me.  Please, help me.”  Byrd testified over objection that Castillo said “Michael
tried to kill me.”  According to Byrd, he said, “Oh help me” when they first
got to him.  She testified, without objection, that Castillo repeated this
statement after they took him inside her apartment.  Byrd testified that
Castillo was “suffering” and “moaning” as he lay in her apartment.

            Byrd’s friend Tammy Rhodes
came over after daylight the next morning.  Rhodes testified without objection
that Castillo said “Michael tried to kill me.”  Rhodes repeated the statement a
few moments later over Sadler’s objection.  Rhodes later repeated the statement
a third time without objection.  Rhodes did not offer any testimony regarding Castillo’s
emotional state that morning.  Because Sadler failed to object two of the three
times Rhodes testified about Castillo’s statement, we hold that Sadler failed
to preserve his complaint with regard to Rhodes’s testimony.[3] 
See Tex. R. App. P. 33.1(a)(1).

            Castillo’s friend Misty
Bronstad came to see him in the emergency room around noon on Sunday.  She
testified that he “was visibly in pain,” appeared to be under the stress of
“being beaten up,” and “was in shock.”  Over objection, she testified that
Castillo told her that Sadler “tried to kill me” when she asked him what had happened.

            Rule of Evidence 803(2)
defines an excited utterance as “[a] statement relating to a startling event or
condition made while the declarant was under the stress of excitement caused by
the event or condition.”  Tex. R. Evid. 803(2).

To determine whether a statement is an
excited utterance, trial courts should determine “whether the declarant was
still dominated by the emotions, excitement, fear, or pain of the event or
condition” when the statement is made.  Factors that the trial court may
consider include the length of time between the occurrence and the statement,
the nature of the declarant, whether the statement is made in response to a
question, and whether the statement is self-serving.

 

Apolinar v. State, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005) (quoting Zuliani v. State, 97 S.W.3d 589, 596 (Tex. Crim. App.
2003)).

            Whatley’s and Byrd’s
testimony both indicate that Castillo was bloody, in severe pain, and pleading
for help when he made the statements to them.  See Gonzalez v. State,
155 S.W.3d 603, 608 (Tex. App.—San Antonio 2004), aff’d on other grounds,
195 S.W.3d 114 (Tex. Crim. App. 2006).  No one could attach a precise timeframe
to the events of the evening, but it would have been within the court’s
discretion to conclude that less than an hour had passed since Castillo was
assaulted.  Although Castillo made the statements in response to Whatley’s and
Byrd’s general questions about what had happened, there is nothing in the
record to indicate that they asked these questions for any reason other than
personal concern, and there is nothing to indicate that Castillo’s responses
were anything but spontaneous.  See Apolinar, 155 S.W.3d at 190; Gonzalez,
155 S.W.3d at 608.  And finally, there is nothing in the record to suggest that
Castillo harbored any self-serving motive when he made these statements.  See
Apolinar, 155 S.W.3d at 190-91.

            Castillo made the statement
to Bronstad about ten or eleven hours after he was assaulted.  While this
length of time is closer to the outer bounds of the time at which a statement may
be found to qualify as an excited utterance, the passage of time, standing
alone, is not determinative.  See Mayfield v. State, No. 04-02-00635-CR,
2003 Tex. App. LEXIS 7660, at *5-6 (Tex. App.—San Antonio 2003, pet. ref’d) (not
designated for publication) (statement made after 10 hours was admissible); Snellen
v. State, 923 S.W.2d 238, 242-43 (Tex. App.—Texarkana 1996, pet. ref’d) (statement
made after 12-13 hours admissible).  At the time, Bronstad noted that Castillo
was in pain, appeared to still be under the stress of the assault, and was in
shock.  As with Whatley and Byrd, Castillo made the statement in response to
Bronstad’s questions, but there is nothing in the record to indicate that Bronstad
asked these questions for any reason other than personal concern, and there is
nothing to indicate that Castillo’s responses were anything but spontaneous.  See
Apolinar, 155 S.W.3d at 190; Gonzalez, 155 S.W.3d at 608.  And as
with Whatley and Byrd, there is nothing in the record to suggest that Castillo
harbored any self-serving motive when he made the statement to Bronstad.  See
Apolinar, 155 S.W.3d at 190-91.

            Accordingly, we cannot say
that the court abused its discretion by admitting the statements made to
Whatley, Byrd, and Bronstad as excited utterances.  Id.; Gonzalez,
155 S.W.3d at 607-08.

Medical Diagnosis or Treatment

            In response to Sadler’s
third point, the State contends that the testimony of one of the witnesses fits
within the hearsay exception for statements made for purposes of medical
diagnosis or treatment.

            A nurse helped translate for
Castillo in the emergency room around 9:30 that morning.  Over objection, she
testified that, when she asked him what had happened, he hesitated then told
her he had been robbed.  He initially declined to identify the perpetrator, but
at her urging, he identified “Michael” as the person who had done it.  But he
added that he did not want to press charges for fear Michael’s father (whom he
named) would “come and kill me.”  The nurse then asked Castillo how it
happened, and Castillo briefly described how Sadler had assaulted him.

            Rule 803(4) defines
statements made for purposes of medical diagnosis or treatment as follows:

            Statements made for purposes
of medical diagnosis or treatment and describing medical history, or past or
present symptoms, pain, or sensations, or the inception or general character of
the cause or external source thereof insofar as reasonably pertinent to
diagnosis or treatment.

 

            

Tex. R. Evid. 803(4).

            Statements similar to those
made by Castillo to the nurse have been consistently held admissible as
statements made for purposes of medical diagnosis or treatment under Rule
803(4).  See, e.g., Guzman v. State, 253 S.W.3d 306, 307-09 (Tex.
App.—Waco 2008, no pet.); Reyes v. State, 48 S.W.3d 917, 922 (Tex.
App.—Fort Worth 2001, no pet.).  Accordingly, we cannot say that the court
abused its discretion by admitting the nurse’s testimony about the statements
Sadler made to her.

            We have addressed the
admissibility of the testimony of five of the six witnesses whose testimony
Sadler challenges in his third point.  We will address the remaining witness’s
testimony in connection with Sadler’s fourth point.  Sadler’s third point is
overruled.

Dying Declaration

            Sadler argues in his fourth
point that the court abused its discretion by admitting the testimony of Beki
Bollinger under the dying declarations exception to the hearsay rule.[4] 
Specifically, Sadler contends that Bollinger’s testimony is not admissible
under this exception because there is nothing to suggest that Castillo believed
his death was imminent when he talked to her.

            Bollinger was Castillo’s
employer.  She came to see him at Scott & White on Monday morning.  Over
objection, Bollinger testified that, when she asked Castillo who had assaulted
him, she read his lips to indicate that “Michael” had done it.[5] 
See Tex. R. Evid. 801(a)
(defining in part a “statement” for purposes of the hearsay rule as “nonverbal
conduct of a person, if it is intended by the person as a substitute for verbal
expression”).  Bollinger continued to talk with Castillo about the assault.

After Luis had been read his last rites,
and made the decision to have the ventilator taken off of him and he knew that
it was a possibility he was going to pass I was standing by his side and [at]
that moment he could speak.  And I asked him, “Luis, why did Michael do this to
you?”

 

Over Sadler’s objection, Bollinger was
permitted to tell the jury Castillo’s answer, which was, “Michael probably
gottie too much mad.”[6]

A statement meets the dying declaration
exception to the hearsay rule if the declarant is unavailable at the time of
trial and the statement is “[a] statement made by a declarant while believing
that the declarant’s death was imminent, concerning the cause or circumstances
of what the declarant believed to be impending death.” . . .  A declarant’s
belief that death was imminent “may be inferred from the circumstances of the
case, such as the nature of the injury, medical opinions stated to him, or his
conduct.”

 

Martinez v. State, 17 S.W.3d 677, 689 (Tex. Crim. App. 2000)
(quoting Tex. R. Evid. 804(b)(2);
Thomas v. State, 699 S.W.2d 845, 853 (Tex. Crim. App. 1985)) (citations
omitted).

            Here, Castillo was
unavailable at trial because of his death.  It is undisputed that his injuries
were severe and his prognosis was grim.  Given the extent of his injuries,
Bollinger’s impression that he knew there was a possibility he would die after
being removed from the ventilator, and the giving of last rites, we cannot say
that the court abused its discretion by admitting Bollinger’s testimony under
the dying declarations exception to the hearsay rule.  See id.; Medrano
v. State, 701 S.W.2d 337, 339 (Tex. App.—El Paso 1985, pet. ref’d). 
Sadler’s fourth point is overruled.

Right of Confrontation

            Sadler contends in his fifth
point that the admission of Chief Childress’s videotaped interview of Castillo
violated his Sixth Amendment right of confrontation.  The State responds that this
issue has not been preserved for appellate review.

            The court conducted a
hearing outside the presence of the jury to determine the admissibility of this
evidence.  Sadler objected that the evidence did not qualify as a dying
declaration and that its probative value was substantially outweighed by the
danger of “unfair sympathy” among the jurors given Castillo’s condition. 
Sadler did not state an objection on confrontation grounds.  Thus, he failed to
preserve this issue for appellate review.  See Wright v. State, 28
S.W.3d 526, 536 (Tex. Crim. App. 2000); Ayala v. State, 267 S.W.3d 428,
437 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).  Sadler’s fifth point is
overruled.

Impeachment with Prior Consistent
Statement

            Sadler argues in his sixth
point that the court abused its discretion by permitting the State to impeach
him with a prior written statement that was not inconsistent with his
testimony.

            On cross-examination, Sadler
denied using methamphetamine on the night of the offense but testified that he
got nervous when he heard he was a suspect and used methamphetamine two nights
later, not long before he reported to jail.  Over Sadler’s objection, the court
admitted his written statement in which he admitted to using methamphetamine
“on or about Oct 23.”

            Sadler contends that it was
impermissible to admit his written statement under Rule of Evidence 613 because
he “unequivocally admitted to using methamphetamine.”  Rule 613(a) provides:

            In examining a witness
concerning a prior inconsistent statement made by the witness, whether oral or
written, and before further cross-examination concerning, or extrinsic evidence
of, such statement may be allowed, the witness must be told the contents of
such statement and the time and place and the person to whom it was made, and
must be afforded an opportunity to explain or deny such statement.  If written,
the writing need not be shown to the witness at that time, but on request the
same shall be shown to opposing counsel.  If the witness unequivocally admits
having made such statement, extrinsic evidence of same shall not be admitted. 
This provision does not apply to admissions of a party-opponent as defined in
Rule 801(e)(2).

 

Tex. R. Evid. 613(a).

            Sadler focuses on his
admission that he engaged in the conduct referred to in his statement. 
Rule 613(a) focuses on whether the witness admits having made the statement
in question.  Nevertheless, Sadler readily conceded in his cross-examination by
the prosecutor that the statement was his.  He then explained why his
interpretation of the statement varied from the prosecutor’s.

            Sadler “unequivocally
admitted” having made the statement though he disputed its meaning.  It would
seem, then, that under Rule 613(a) the statement itself was not to be
admitted.  Id.  However, the next sentence of the rule states, “This
provision does not apply to admissions of a party-opponent as defined in Rule
801(e)(2).”  Id.

            Rule 801(e)(2)(A) defines an
admission of a party-opponent as a statement “offered against a party” which is
“the party’s own statement.”  Id. 801(e)(2)(A).  Thus, Sadler’s
statement qualifies as an admission of a party-opponent under the rule.  See
id.; Trevino v. State, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999);
Strong v. State, 138 S.W.3d 546, 553-54 (Tex. App.—Corpus Christi 2004, no
pet.).  Because the statement was an admission of a party-opponent, Rule 613
did not apply.  Strong, 138 S.W.3d at 553-54.  Sadler’s sixth point is
overruled.

We affirm the judgment.

 

FELIPE REYNA

Justice

 

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed April 29, 2009

Do not publish

[CRPM]









[1]
              It is unclear from
the opinion of the Court of Criminal Appeals when Lopez had engaged in the drug
usage at issue, nor is this chronological information ascertainable from the
lower court’s opinion on remand.  See Lopez v. State, 928 S.W.2d 528,
530-32 (Tex. Crim. App. 1996); Lopez v. State, 939 S.W.2d 775, 776-77
(Tex. App.—Austin 1997, no pet.).  The lower court’s earlier decision was
unpublished.  See Lopez, 928 S.W.2d at 530.





[2]
              Other portions of
the opinion in Marcel were designated for publication.  See Marcel v.
State, 64 S.W.3d 677 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).





[3]
              In the alternative,
we would hold that any error in admitting the statement on the one occasion
Sadler objected was rendered harmless by the two other instances when the
statement was admitted without objection.  See Leday v. State, 983
S.W.2d 713, 718 nn.6-7 (Tex. Crim. App. 1998) (erroneous admission of evidence
is generally rendered harmless when similar evidence is admitted without
objection); Elder v. State, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004,
pet. ref’d) (same); Webster v. State, 26 S.W.3d 717, 723 (Tex. App.—Waco
2000, pet. ref’d) (same).





[4]
              In a hearing outside
the presence of the jury, the court initially determined Bollinger’s testimony
to be admissible under the excited utterance exception.  Before the jury, the
State argued that the testimony was also admissible as a dying declaration, and
the court overruled a subsequent objection under this theory.  We must uphold a
trial court’s evidentiary ruling if it is correct under any theory of law
applicable to the case.  See Ruffin v. State, 270 S.W.3d 586, 597 (Tex. Crim. App. 2008).

 





[5]
              At the time,
Castillo had a breathing tube “in the side of his mouth” and was “whispering
somewhat.”

 





[6]
              Bollinger explained
that Luis spoke only broken English.